No. 84,876

STATE OF KANSAS, *Appellee*, v. RONNIE DALE BRANNING, *Appellant*.

(26 P.3d 673)

Opinion filed July 13, 2001.

*Randall L. Hodgkinson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Ellen H. Mitchell*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Ronnie Dale Branning was convicted by jury of first-degree felony murder, K.S.A. 21-3401(b), aggravated robbery, K.S.A. 21-3427, aggravated burglary, K.S.A. 21-3716, and criminal destruction of property, K.S.A. 21-3720. His appeal challenges hearsay statements of an unavailable witness, the trial court's limitation of his cross-examination concerning Garrett Harris' plea agreement, the trial court's failure to compel the appearance of a defense witness, the trial court's failure to instruct on the lesser included offenses of premeditated murder, and the imposition of an illegal sentence. Our jurisdiction is pursuant to K.S.A. 22-

3601(b)(1) (imposition of a maximum sentence of life imprisonment).

On September 16, 1998, Jarold Johnson was found dead in his residence in Salina, Kansas. After an investigation, charges were filed against Branning, Louis Brouillard, Terry Gilbert, and Harris.

Harris testified against Branning pursuant to a plea bargain. The State agreed to drop the murder charges against Harris for Harris' agreement to testify truthfully and plead guilty to the aggravated robbery and aggravated burglary charges. Harris testified that on the night of September 14, 1998, he, Branning, Brouillard, Jason Lewis, and Gilbert were together at a party. Gilbert and Brouillard stated that they were going to collect some money, and all five of the men got into Brouillard's pick-up truck and went to Johnson's house.

Harris further testified that Brouillard passed out socks to the group as they approached the house and told them to put the socks over their hands. Gilbert kicked in the front door, and everyone entered the house except Lewis. Gilbert and Brouillard proceeded to beat up Johnson, and Gilbert struck him on the head with a coffee table. Harris observed some change and cartons of cigarettes being taken from the residence.

After they left and returned to the truck, Harris stated he saw Branning hold up a wallet and say, "I got it." The five then got back into the truck and went back to Brouillard's house.

Branning testified and denied any participation in the crime. He could not remember his exact whereabouts on the evening in question but said he could have been at Dave Koenig's home. He admitted Johnson owed him approximately $550 for a roofing job he did while working for Johnson.

Other facts will be discussed as they relate to the specific issues raised.

*Hearsay statements*

Branning first argues that statements allegedly made by Gilbert were introduced at trial in violation of his right to confrontation under the Sixth Amendment.

At trial, Margaret Kelso Kenney was called as a witness by the State. She testified that she was at a party at Gilbert's house on the night of September 14, 1998, and Gilbert, Lewis, Brouillard, and Harris were all present. She did not believe Branning was at Gilbert's house on that night. She said that she saw the four leave together.

When Kenney was asked what Gilbert told her he was going to do prior to leaving, the defense counsel objected. The court overruled the objection, finding that Gilbert was unavailable because he was a defendant in a companion case and had given written notice to the court that he was invoking his Fifth Amendment rights. The court concluded that "the exception to the hearsay rule of unavailability has been complied with." When defense counsel asked the court to question Gilbert because he believed that Gilbert wanted to testify, the court responded: "[T]hen if Mr. Gilbert wishes to testify, it's certainly not hearsay. If he does not wish to testify and assert his privilege, he's unavailable; so, therefore, it's not hearsay." Gilbert never testified at Branning's trial.

The prosecutor then asked Kenney when Gilbert said he was going to return. She did not remember that he had given any specific time. After several more questions, none of which related to statements made by Gilbert, she was asked what Gilbert told her when he came back late that evening. She responded that Gilbert admitted to fighting with Johnson over at his house and stated that he, Brouillard, Harris, and Lewis were involved. However, she testified that she did not remember him saying that Branning was there. The defense counsel did not object during any of this subsequent line of questioning. It is important to note that none of Kenney's testimony implicated Branning.

Later, Officer Siemsen was called to the stand. He was asked about his interview with Kenney. He stated that during the interview Kenney told him that Johnson was not supposed to die. The defense counsel objected, arguing that the statement was clearly based on hearsay. The court noted the objection and overruled it. Eight questions later, the prosecution asked the officer if Kenney stated which individuals were involved, and he said she had named

Gilbert, Brouillard, Branning, and Harris. The defense did not object to this question.

Officer Feldman, who was also present at the Kenney interview, was asked the same question about the named participants, and the defense counsel made a timely objection. The officer was allowed to answer, and he gave the same response as Officer Siemsen.

Pointing to the above-mentioned objections, Branning now argues all the testimony of Kenney is "squarely" before our court. The State points out that Branning's objections were not made at the time the objectionable evidence was introduced and contends the issue has not been properly preserved, citing *Welch v. State*, 270 Kan. 229, 233, 13 P.3d 882 (2000), where we said:

> "K.S.A. 60-404 provides:
> 'A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.'
> "As we summarized in *State v. Harris*, 266 Kan. 270, Syl. ¶ 3, 970 P.2d 519 (1998): 'The contemporaneous objection rule requires a timely and specific objection to the objection of evidence or an improper closing argument, or the objection will not be considered on appeal."

As we have previously held in *McKissick v. Frye*, 255 Kan. 566, 582, 876 P.2d 1371 (1994):

> "Kansas does not follow the rule that if an earlier objection is overruled, repeated objections are not required . . . . In order to raise the admissibility of evidence as an issue on appeal, the record must show a timely and specific objection. K.S.A. 60-404. If a continuing objection is lodged, failure to object when the evidence is subsequently readmitted does not bar raising the issue on appeal. [Citation omitted.]"

There was no request for a continuing objection in *McKissick*, and we held that "[w]ithout a continuing objection made when the procedure was first raised by the plaintiff, on appeal Frye cannot contest the subsequent discussion of the procedure in plaintiff's closing argument." 255 Kan. at 583.

Branning made no request for a continuing objection here. We hold this issue was not properly preserved for appeal. Further, it

appears that Kenney's statements that Branning was not involved was actually helpful to and substantiated his subsequent testimony that he did not participate in the charged crimes. Branning cannot have it both ways, allow nonincriminating evidence to be admitted without objection and then contend on appeal after a guilty finding that the testimony was erroneously admitted.

*Limited cross-examination*

Branning next alleges that it was error for the trial court to prohibit cross-examination of Harris about his possible sentencing range under his plea agreement.

During direct examination, Harris explained the plea agreement under which he was testifying: The State agreed to drop the murder charge against him if he pled guilty to aggravated robbery and aggravated burglary and testified truthfully in the co-defendant's trials. On cross, the defense counsel had Harris reiterate the terms of the plea. When Harris was asked whether there was a recommendation for sentencing, he responded: "There's no understanding, I don't think."

Defense counsel then asked if Harris knew what his sentencing range would be. The trial court objected *sua sponte* and admonished the defense counsel to not get into the specifics of the sentencing range. The defense counsel argued that it was important for the jury to know that Harris was pleading down from a possible life sentence to 46 to 51 months. The defense counsel also stated that it was his belief that a recommendation for concurrent sentencing would be made. The prosecutor denied promising any recommendations. The trial court rejected the defense's argument, reminded counsel that the bargain had been fully disclosed, and again admonished counsel to not mention time or months concerning the sentences.

We have considered this issue in our prior decision of *State v. Davis*, 237 Kan. 155, 157-58, 697 P.2d 1321 (1985). In that case, Davis was allowed to question a prosecutorial witness about a plea bargain, but the court would not allow questions about the specific sentence because such information would allow the jury to infer

what Davis' sentence might be. We affirmed the trial court's ruling and opined:

"The credibility of an accomplice is subject to attack and great leeway should be accorded the defense in establishing the witness's subjective reason for testifying. *United States v. Harris*, 462 F.2d 1033 (10th Cir. 1972); *State v. Corn*, 223 Kan. 583, 575 P.2d 1308 (1978); *State v. Ramsey*, 228 Kan. 127, 612 P.2d 603 (1980). On the other hand, it lies within the sound discretion of the trial court to determine the propriety and scope of the examination and, absent a showing of a clear abuse of the exercise of the power of discretion, there is no prejudicial error. *United States v. Walton*, 552 F.2d 1354 (10th Cir. 1977); *State v. Carr*, 230 Kan. 322, 634 P.2d 1104 (1981). [Citation omitted.]" 237 Kan. at 158.

The facts and holding of *Davis* are on point and dispositive of the present case. Branning was given an opportunity to cross-examine Harris about his plea bargain. Even beyond the requirements of *Davis*, he was permitted to question Harris as to whether any special sentencing arrangement had been made, to which Harris responded in the negative. Under *Davis*, the court did not abuse its discretion in so limiting the testimony of codefendant Harris.

Branning argues that this court should follow the dissenting opinion of Justice Lockett in *Davis* and our court's holding in *State v. Rinck*, 256 Kan. 848, 854-55, 888 P.2d 845 (1995).

In *Rinck*, we set forth a thorough analysis of the Confrontation Clause of the Sixth Amendment as it concerns a defendant's right to cross-examine an accomplice on the length of his or her sentence received pursuant to a plea. One of the defendant's accomplices had received a plea bargain in which one charge was dropped, and he was permitted to be tried as a juvenile. This information was allowed into evidence, as well as the accomplice's own description of the sentence as a "slap on the wrist." The court did not permit any specific sentence lengths to be discussed. Relying on *Davis*, we found that the trial court did not abuse its discretion by refusing to allow inquiry into the amount of prison time the witness was to receive. However, we further pointed out that even if the district court's actions "could be characterized as error," the effect of the error would be harmless. 256 Kan. at 855.

Branning's reliance on *Rinck* is misplaced. *Rinck* not only cited *Davis* with approval, but the facts were analogous to our present

case and buttresses a finding that the trial court did not abuse its discretion. Additionally, we followed *Davis* in *State v. Osby*, 246 Kan. 621, 627, 793 P.2d 243 (1990). Finally, Branning's arguments are devoid of any substantial and compelling reasons to overturn past case precedent of this court. See *State v. Lee*, 266 Kan. 804, 820, 977 P.2d 263 (1999) (Larson, J., concurring and dissenting).

*Compulsory process*

Branning argues that his Sixth Amendment right to compulsory process was violated when the court refused to force James Lister, a defense witness, to testify after Lister had invoked his Fifth Amendment privilege against self-incrimination.

At trial, Branning attempted to call Lister to the stand. He proffered that Lister would testify concerning a conversation he had with Harris in jail where Harris only mentioned Brouillard, Gilbert, and himself as participants in the crime. The defense counsel argued Lister had no Fifth Amendment right that would prevent him from testifying because he was not involved in the case and had waived any right by talking voluntarily with defense counsel. Lister's attorney was present and responded that his client might be implicated in a conspiracy through his testimony and that Lister was invoking his Fifth Amendment right not to testify. Lister's counsel argued that although he believed his client had done nothing wrong, the evidence introduced need only tend to incriminate Lister.

The court initially found that Lister could not be called as a witness but then at the prompting of defense counsel personally asked Lister if he was invoking his Fifth Amendment right. Lister answered affirmatively. The court then stated: "He has asserted it, Mr. Sheahon [Defense counsel]. You know the rules as well as I do."

Later that day, the defense counsel again attempted to call Lister, advising the court that Lister had approached him and asked to testify on Branning's behalf. Branning's counsel stated he was unable to reach Lister's counsel concerning the matter. The court refused to allow Lister to be called until his counsel had been contacted.

Sometime after 3 p.m. that day, Lister's counsel appeared before the court. According to defense counsel, Lister had left a few minutes before his attorney arrived. The court refused to issue an order for Lister to be picked up unless Lister's counsel consented. He did not. The court reminded defense counsel that Lister had previously invoked his Fifth Amendment right, and the court refused to issue a pickup-order. The court also refused Branning's request for additional time to go to Abilene and get Lister.

There is a good argument that it would have been proper to require Lister to testify in this case. However, simply because Lister was not called to the stand does not make this erroneous. A witness cannot be called simply for the purpose of requiring that he or she invoke his or her right against self-incrimination in front of the jury. *State v. Crumm*, 232 Kan. 254, 261, 654 P.2d 417 (1982).

At trial, Lister's counsel refused to allow his client to testify because he alleged that the testimony might tend to implicate his client in a conspiracy. In fact, the testimony proffered by defense counsel concerned a conversation Lister had about the crime with Harris while in jail together. Had there been any concern that Lister was somehow involved in the burglary with Gilbert and Brouillard, Lister conversing with Harris about the crime would be incriminating evidence against him. Lister would be entirely justified in claiming a Fifth Amendment privilege not to discuss any details of the conversation with Harris or even that the conversation ever occurred. Hence, the trial court did not abuse its discretion by refusing to allow Lister to be called.

Branning asserts that Lister never made any showing of possible incrimination, and therefore it was error to not allow him to be called. He points to well-known standards of our court concerning what type of evidence is required to establish a possibility of incrimination and invoke the Fifth Amendment privilege. He cites *State v. McQueen & Hardyway*, 224 Kan. 420, 582 P.2d 251 (1978), which does have applicability.

In *McQueen*, the State called to the stand a witness who claimed the Fifth Amendment privilege and was subsequently excused from the stand. Later, the State requested a hearing to determine

if the witness was properly invoking his privilege under K.S.A. 1976 Supp. 22-3101 and K.S.A. 22-3102, the inquisition statutes. The hearing was granted, and the court concluded, after listening to him answer several questions, that the witness had no Fifth Amendment privilege at stake. The defendant complained that the inquisition statutes gave the prosecution an unfair advantage. On appeal, we noted that either side has available the power to request that a court hold a hearing to determine whether a Fifth Amendment claim is valid:

"When a witness refuses to answer questions on the ground his answers will incriminate him the trial court may hold a hearing in chambers to determine if the witness is justified in claiming the Fifth Amendment privilege. We see little difference between this and the use of the inquisition statute to examine justification, if any, for the claim of privilege." 224 Kan. at 429.

As we held in *McQueen*, the trial court *may* hold a hearing to determine if the witness is appropriately claiming his or her Fifth Amendment right. Branning seems to assert that the trial court has an affirmative duty to conduct such an investigation. This is clearly incorrect.

Branning's counsel did not request a hearing to determine whether Lister's Fifth Amendment claim was justified. He heard Lister's counsel explain that the testimony might implicate him in a conspiracy, and Lister himself expressly invoked the Fifth Amendment. Branning never requested that the trial court permit questioning of Lister as to his claimed privilege, and he cannot now complain of the failure to explore this issue further. " ' "[A] litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal." ' " *State v. Saleem*, 267 Kan. 100, 109, 977 P.2d 921 (1999). Also, issues not raised to the trial court cannot be raised for the first time on appeal. *State v. Sims*, 262 Kan. 165, 170, 936 P.2d 779 (1997).

Branning also asserts that Lister waived his privilege against self-incrimination by talking with Branning's counsel about the conversation with Harris. K.S.A. 60-437 states:

"A person who would otherwise have a privilege to refuse to disclose or to prevent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that such person or any other person

while the holder of the privilege has . . . (b) without coercion, or without any trickery, deception, or fraud practiced against him or her, and with knowledge of the privilege, made disclosure of any part of the matter or consented to such a disclosure made by anyone."

The record does not reflect, nor does Branning contend, that Lister had knowledge of his Fifth Amendment right at the time he discussed the conversation between himself and Harris with defense counsel. Branning has the burden of furnishing and designating a sufficient record on appeal to show prejudicial error occurred at the trial court. "In the absence of such a record, an appellate court presumes that the action of the trial court was proper. [Citation omitted.]" *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997).

*Lesser included offense instructions*

Branning next argues that he was improperly deprived of his right to have the jury instructed on lesser included offenses of first-degree premeditated murder, specifically second-degree murder, voluntary manslaughter, and involuntary manslaughter.

Branning was charged with first-degree premeditated murder and first-degree felony murder under K.S.A. 21-3401(a) and (b). He requested and was denied an instruction on all the lesser included offenses of first-degree premeditated murder. The jury did, however, specify in its verdict, as required by the instructions, that it was finding Branning guilty of felony murder and not premeditated murder.

As the State points out, Branning cannot complain on appeal that the jury was not instructed on the lesser included offenses of first-degree premeditated murder where the jury never convicted him of the greater offense.

Branning cites to *State v. Strauch*, 239 Kan. 203, 718 P.2d 613 (1986), for the argument that a lesser included offense must be instructed to the jury even when the defendant is convicted of an alternative theory of first-degree murder. While in *Strauch*, the conviction was premeditated first-degree murder and here the conviction was of felony murder, our *Strauch* opinion stated:

"When murder is committed during the commission of a felony, the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first-degree murder. It is only when the evidence of the underlying felony is weak, inconclusive, or conflicting that instructions on lesser included offenses may be required. *State v. Murdock*, 236 Kan. 146, 155, 689 P.2d 814 (1984); *State v. Shaffer*, 229 Kan. 310, 316, 624 P.2d 440 (1981); *State v. Foy*, 224 Kan. 558, 582 P.2d 281 (1978); *State v. Sullivan & Sullivan*, 224 Kan. 110, 578 P.2d 1108 (1978). Based on the facts previously discussed, the evidence on the charge of aggravated criminal sodomy was neither weak, inconclusive, nor conflicting. The trial court properly refused the defendant's requested instructions." 239 Kan. at 218-19.

*Strauch* is not helpful to Branning, as the trial court would only have committed error in refusing to instruct on the lesser included offenses if the evidence supporting the underlying felony was weak, conflicting, or inconclusive. Branning does not allege or argue, nor does the record reflect, that the evidence of the underlying felony of aggravated robbery or aggravate burglary had any of these characteristics. Branning's argument fails.

*Illegal sentence*

Branning finally requests that we review the sentence recorded on the journal entry. At sentencing, the court imposed a 73-month sentence for the aggravated robbery charge. The journal entry stated that a 77-month sentence was imposed for the crime. As we have consistently held: "A journal entry which imposes a sentence at variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed." *State v. Hegwood*, 256 Kan. 901, 906, 888 P.2d 856 (1995). The State concedes this issue and claims that an order nunc pro tunc has been filed to reflect the correct sentence. We have not received a copy of this order, but we rely on the State's representation that the journal entry now reflects the sentence imposed.

Affirmed.