No. 89,153

State of Kansas, *Appellee*, v. Brandon C. Boone, *Appellant*.

(83 P.3d 195)

Opinion filed January 30, 2004.

*Randall L. Hodgkinson,* deputy appellate defender, argued the cause and was on the brief for appellant.

*Debra S. Peterson,* deputy district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Phill Kline,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Brandon C. Boone appeals his jury trial convictions of one count each of first-degree murder, aggravated robbery, aggravated burglary, and aggravated arson. He does not contest the aggravated robbery and aggravated burglary convictions but contends the evidence was insufficient to support the aggravated arson and first-degree murder convictions. He also claims that the district court should have given lesser included jury instructions for second-degree murder and involuntary manslaughter. We affirm.

Facts

On June 28, 2001, Mark Eads, the victim, attended a barbecue at the home of Bonnie Laurel. Zachary Steward approached Laurel and told her he was looking for Eads. Steward found Eads and they talked for a few minutes. They then left together in the direction of Eads' home. About an hour later, Eads returned to the barbecue and told Laurel that he and Steward had gone to Eads' house, that they smoked crack, and he had sucked Steward off. Eads told her that Steward had gone to a friend's house on Bitting Street, and when he did not return, Eads decided to return to the barbecue. About an hour later, Steward returned to the barbecue and spoke with Eads. Steward and Eads again left the party around 10:30 or 11:00 p.m. for Eads' home, taking with them three cans of Milwaukee's Best beer.

About 4 p.m. the same day, Rachel Mroczkowski went to see her friend Chelsie Christner and Chelsie's boyfriend, the defendant Brandon Boone, at Christner's home on 1216 Bitting Street. Mroczkowski testified that the defendant left the house for about

an hour and returned around 8 p.m. with a guy named Jose. Steward arrived at Christner's home and Jose gave Steward and the defendant tattoos before leaving.

Steward left the house for about 30 minutes, returned, and asked if anyone wanted to buy cocaine, and then left again for about 30 more minutes. Upon his return, Steward said he was at a guy's house who was trying to sell him cocaine, and the guy grabbed him in the crotch and offered him a blow job in exchange for cocaine. Steward said he took beer and cigarettes and left; however, he repeatedly said that he "wanted to kick the fag's ass and take his shit" in front of the defendant.

Nick Farinas also lived on Bitting Street close to Christner's and was a friend of Chelsie and her brother Cory Christner. He arrived at Christner's home around 12:30 a.m. on June 29, 2001. He verified that Steward told everyone present, Chelsie Christner, Mroczkowski, himself, and the defendant, that he had been touched at a party, that he wanted to find this guy and beat his ass, and that he wanted to steal items from the guy. Steward asked Farinas if he wanted to go "kick his ass," but Farinas declined the invitation. Farinas went to the grocery store to buy cigarettes and upon his return, Steward and the defendant left Christner's home.

Mroczkowski testified that the defendant and Steward left the house, were gone for about 30 minutes, and returned with a CD player. Later that evening, Mroczkowsi and the defendant were upstairs and Steward called for him saying that he had just thought of something really important and they needed to talk. The defendant told Mroczkowski that he had to leave for a little bit to go "back to the fag's house" to wipe up the fingerprints they had left. Steward and the defendant left again for about 45 minutes, returning around 3 a.m.

At approximately 3 a.m. on June 29, 2001, a house fire was reported in the 1200 block of North Jackson. The fire was located at 1218 North Jackson, and arson investigator Stuart Bevis testified that Eads rented this residence. Firefighters discovered Eads, who was deceased, slumped over a coffee table in a semi-kneeling position. Eads had multiple burns, smoke, and soot on his face and body, and he had blood around his face.

The arson investigator testified that the front and back door to the residence were unlocked and no signs of forced entry were discovered. He opined that the fire was intentionally set in a bookshelf in the dining room. He also testified that Eads' burns were not consistent with the position he was in during the time of the fire.

At the scene, police officers found a candlestick with blood and hair and a wooden staff with blood and biological matter. A computer printer was found on the dining room floor but no computer monitor or tower processing unit was discovered in the home. The serial number on the computer boxes in the house matched the serial number of the monitor subsequently discovered in the trunk of the car the defendant had been driving. Cans of Milwaukee's Best beer were found in the kitchen and on the front lawn. Steward's fingerprint was found on the beer can on the front lawn.

The coroner who performed the autopsy observed burns on 50% of Eads' body, blunt force injuries to his head and arms, bruising to his brain, and a stab wound on his head. He opined that the cause of death was smoke inhalation and thermal burns but the blunt force injuries and stab wound to the head contributed to his death. Eads had cocaine and marijuana metabolites in his system and a blood alcohol level of .18.

The following morning at approximately 10:50 a.m., the defendant, Steward, and Josh Huffman were observed on a surveillance tape trying to pawn a GPX stereo. Steward and Huffman then went to Farinas' house and asked him to come to the Christner house because they had items to sell. Farinas went to the Christner house around 12:30 p.m. and saw a computer monitor, a CD receiver, two speakers, and PC unit in the trunk of Cory Christner's car. The defendant was at Christner's house at this time.

Police executed a search warrant for the Christner residence Friday evening. They found the defendant hiding in the attic and arrested him. Later tests of the jeans the defendant was wearing revealed bloodstains, which upon examination revealed DNA consistent with the defendant's DNA, with minor contributions from Eads. Blood on one of Steward's shoes was also examined, reveal-

ing DNA consistent with Eads' DNA and with minor contributions from Steward.

Cory Christner's car was parked behind the Christner residence. Chelsie Christner testified that the defendant borrowed Cory's car on Thursday and he returned the keys to her on Friday afternoon. Farinas witnessed the defendant returning the keys to Chelsie.

Police officers searched the car and discovered a stone with blood on it, two speakers, a GPX stereo, and Gateway computer equipment consisting of a monitor, a keyboard, a mouse, and a modem. Steward's fingerprints were found on the car; the defendant's fingerprints were found on the computer modem. Blood on the stone was examined, revealing blood consistent with Eads' blood.

The defendant was charged with premeditated first-degree murder, felony murder with aggravated robbery or aggravated arson as the underlying felony, aggravated burglary, aggravated robbery, and aggravated arson. The defense did not request, nor did the district court instruct the jury on, any lesser included offense. The jury was given an aiding and abetting instruction.

The defendant was convicted of first-degree murder on the combined theories of premeditated and felony murder and was found guilty on all the remaining charges. He was sentenced to life imprisonment with the possibility of parole in 20 years and a consecutive term of 72 months' imprisonment.

## 1. Sufficiency of evidence regarding aggravated arson and first-degree felony murder

The defendant advances the following two arguments:

(1) The defendant contends that there was insufficient evidence to establish that the property damaged was one in which another person had any interest, an essential element of aggravated arson. He acknowledges that "any interest" may include a leasehold interest but argues the arson investigator's testimony that Eads was a "renter" was insufficient to show a leasehold interest as a matter of law. See *State v. Rodriguez*, 269 Kan. 633, 635, 8 P.3d 712 (2000) ("The words 'any interest' cover more than just a 'fee simple in-

terest' and include, for example, a leaseholder's interest in real property.").

(2) The State failed to prove he aided or abetted in the aggravated arson in that there was insufficient evidence that he intentionally promoted or assisted in the commission of aggravated arson or that the aggravated arson was reasonably foreseeable from the crime of aggravated burglary or aggravated robbery. He argues the State did not prove that he was ever in Eads' home, that he knowingly participated in or was aware of the arson, that he knew what happened to Eads, or that it was reasonably foreseeable that Steward would burn down the house.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

<u>(A) Aggravated arson element of damaging a building in which another person has any interest</u>

The defendant was charged with aggravated arson, defined as knowingly, by means of fire or explosive, damaging any building or property which is a dwelling in which another person has *any interest* without the consent of such other person, and committed upon a building or property in which there is a human being. (Emphasis added.) K.S.A. 21-3719(a). In amending the arson statute from "property of another person" to the present statute using the words "any interest," our legislature intended to expand the types of property interest protected by the arson statute. *State v. Johnson*, 12 Kan. App. 2d 239, 242, 738 P.2d 872, *rev. denied* 242 Kan. 905 (1987). *Johnson* concluded that "any interest" includes a leasehold interest in real property. 12 Kan. App. 2d at 243.

Black's Law Dictionary 890 (6th ed. 1990) defines leasehold as "[a]n estate in real property held by lessee/tenant under a lease. The four principal types of leasehold estates are the estate for years, periodic tenancy, tenancy at will, and tenancy at sufferance. The asset representing the right of the lessee to use leased property."

Sufferance is defined as "[t]oleration; negative permission by not forbidding; passive consent; license implied from the omission or neglect to enforce an adverse right." Black's Law Dictionary 1432.

The defendant argues that an oral contract to lease realty for more than a year is void under the statute of frauds, citing K.S.A. 33-105, which provides that "[n]o leases . . . exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same." See *Daniel v. Leben*, 188 Kan. 344, 348-49, 362 P.2d 634 (1961). In order to prove that Eads had a leasehold interest in the damaged building, the defendant contends the State would either have to provide nonhearsay evidence that the lease was for a year or less or provide a written lease agreement reflecting a lease for more than 1 year.

It is not incumbent upon the State to establish exactly what type of leasehold interest the "renter" or "tenant" has to satisfy the "any interest" used in our arson statute. This is true in this case where the issue of that interest is not contested by the defendant. All that is required is for the State to establish that the property damaged is a dwelling in which another person has any interest, and was damaged without the consent of the other person. The four principal types of leasehold estates are the estate for years, periodic tenancy, tenancy at will, and tenancy at sufferance. Key to understanding the arson statute is that there is no need to establish the exact nature of the interest of the other person if it is established that the other person had a leasehold interest in the dwelling. If such an interest is contested at trial, it may be incumbent upon the State to establish the nature of the leasehold interest. However, if the interest is not contested, and there is evidence that the other person is renting the property and occupied the dwelling, such an interest is sufficient under our arson statute.

In this case, the undisputed evidence was that Eads rented 1218 N. Jackson and that he resided at that home. See *State v. Kimball*, No. 60,434, unpublished opinion filed January 15, 1988 ("The evidence, disclosing that Courtney rented the property and was a tenant at the time of the fire, was sufficient to establish that interest in the property required by the arson statute. . . . The evidence

was undisputed that Courtney rented the property, and thus had a leasehold interest."); *State v. Johnson*, 12 Kan. App. 2d 239, 240-43, 738 P.2d 872, *rev. denied* 242 Kan. 905 (1987) (evidence establishing only that the Patton and Davis law firm leased the building from the owners was sufficient to satisfy the "any interest" element in the arson statute). Thus, we conclude that the undisputed trial evidence was sufficient to satisfy the "any interest" element of aggravated arson.

(B) To establish that defendant aided and abetted aggravated arson, it must be established that defendant intentionally participated in, intentionally assisted, promoted, or reasonably foresaw the aggravated arson.

The defendant argues that there was insufficient evidence presented to establish his guilt of the underlying felony of aggravated arson and, therefore, his felony murder conviction predicated in part on that felony must be reversed.

The jury was given the following instructions on aiding and abetting:

"A person who, either before or during its commission, intentionally aids, abets, advises, hires, counsels or procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

"A person who intentionally aids, abets, advises, hires, counsels or procures another to commit a crime is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the other crime was reasonably foreseeable."

The defendant cites a civil case decided by the Ninth Circuit regarding proof by circumstantial evidence. *Fegles Const. Co. v. McLaughlin Const. Co.*, 205 F.2d 637, 639 (9th Cir. 1953), holds that such evidence is

"subject to the rule that if the conclusion reached from the facts in the chain of circumstances is equally consonant with the issues to be proven and with some other theory or theories inconsistent therewith, it becomes a mere conjecture, and the rule of the burden of proof is not satisfied."

The defendant contends it is equally likely from the evidence in this case that the defendant drove with Steward to the house, assisted him with the stolen items after Steward removed·them from the home, and then drove Steward back to wipe off fingerprints.

*Fegles* is not binding on this court. Moreover, it is a civil case and the defendant's reliance on it is misplaced. Even *Fegles* notes that the above rule does not

"alter the general rule that in civil cases a preponderance of the evidence is sufficient to establish the fact in issue. While the plaintiff must show that the inferences favorable to him are more reasonable or probable than those against him, the circumstantial evidence in civil cases need not rise to that degree of certainty which will exclude every other reasonable conclusion. . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." *Fegles*, 205 F.2d at 639.

This court has addressed a similar argument to that raised by the defendant in *State v. Crosby*, 182 Kan. 677, 685, 324 P.2d 197 (1958). Crosby was convicted of arson and argued on appeal that circumstantial evidence was insufficient to establish his guilt because such evidence might also be deemed compatible with innocence. This court rejected that argument, reasoning that "the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That question was for the jury and trial court, and the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt." 182 Kan. at 685.

A reasonable inference of guilt may be established by circumstantial evidence as Kansas case law is clear that a conviction for even the gravest offense may be sustained on circumstantial evidence. "Circumstantial evidence tends to prove a fact in issue by proving other events or circumstances which afford a basis for reasonable inference by the jury of the occurrence of the fact in issue." *State v. Evans*, 275 Kan. 95, 105, 62 P.3d 220 (2003). The element of intent necessary to show aiding and abetting may be inferred from circumstantial evidence. *State v. Dunn*, 243 Kan. 414, 431, 758 P.2d 718 (1988).

In this case, evidence that the defendant, either directly or as an aider and abetter, knowingly damaged Eads' home by means of fire was overwhelming. The defendant left with Steward, who proclaimed that he wanted to "kick the fag's ass and take his shit." The defendant returned a short time later with property taken from Eads' residence. After a few hours, Steward had a discussion with the defendant, and the defendant told his girlfriend that they were going "back to the fag's house" to wipe up fingerprints. Around the same time that Steward and the defendant returned to the Christner residence, a fire was reported at Eads' home. Eads was found dead with blunt trauma and cutting wounds, his blood was found on the defendant's jeans, and the defendant's fingerprints were found on property taken from Eads' residence in the trunk of the car that the defendant had borrowed.

From this evidence, the jury could form a reasonable inference that the defendant accompanied Steward to Eads' residence, assisted him in harming Eads and taking his property, and returned to the residence with the specific intent to remove evidence that they had left at the residence. Even if this evidence supported another theory of events, this court's function is to determine whether a basis of evidence exists to support the jury's determination of guilt. We conclude that sufficient evidence supported the defendant's convictions of aggravated arson and felony murder.

Moreover, even if we were to conclude that insufficient evidence supported the defendant's aggravated arson conviction, the felony-murder conviction depended not only on the aggravated arson but also depended upon the aggravated robbery. The jury was instructed that the felony-murder charge could be based on either aggravated arson or aggravated robbery. The defendant does not challenge his aggravated robbery conviction on appeal. In *State v. Davis*, 247 Kan. 566, 573, 802 P.2d 541 (1990), this court concluded that

"[a] defendant's conviction for felony murder need not be vacated because of a rule requiring that a general guilty verdict be set aside if the jury was instructed that it could find the defendant guilty of felony murder on any two or more independent felonies, and one of the felonies is insufficient, if the jury expressly found a legally sufficient felony to support the murder conviction."

## 2. Lesser Included Offense Instructions

The defendant did not request any lesser included instructions at trial but argues on appeal that the trial court should have instructed the jury on the lesser included offenses of second-degree murder and involuntary manslaughter under the premeditated murder charge. The jury convicted the defendant of first-degree murder under the combined theories of premeditation and felony murder without reaching an agreement as to which theory applied.

Where there is substantial evidence to support a conviction for a lesser offense, the trial judge is required to instruct on the lesser offense. However:

" 'When murder is committed during the commission of a felony, the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first-degree murder. It is only when the evidence of the underlying felony is weak, inconclusive, or conflicting that instructions on lesser included offenses may be required. [Citations omitted.]' " *State v. Branning,* 271 Kan. 877, 887, 26 P.3d 673 (2001).

The underlying felonies in this case were aggravated arson or aggravated robbery. As discussed in the previous issue, the evidence of the underlying felony of aggravated arson was not weak, inconclusive, or conflicting. The evidence of aggravated robbery in this case was likewise strong. The trial court was not therefore obligated to give lesser included instructions for the felony murder.

The question remains whether the defendant was entitled to instructions under the charge of first-degree premeditated murder. In *State v. Hoge,* 276 Kan. 801, 80 P.3d 52 (2003), the defendant, as in this case, was convicted under the combined theories of premeditated and felony murder without reaching an agreement as to which theory applied. Hoge appealed the trial court's refusal to give lesser included instructions under the premeditated murder theory because the evidence of the underlying felony was not weak or inconclusive. We concluded that because the jury was divided regarding the theory for Hoge's first-degree murder conviction, this court should review each theory separately to determine whether the jury should have been instructed on lesser included crimes. 276 Kan. at 805; see *State v. Douglas,* 274 Kan. 96, 103-

105, 49 P.3d 446 (2002), *cert. denied* 537 U.S. 1198 (2003); *State v. Gilbert,* 272 Kan. 209, 213-15, 32 P.3d 713 (2001); *Branning,* 271 Kan. at 886-87; *State v. Rayton,* 268 Kan. 711, 723, 1 P.3d 854 (2000); *State v. Jones,* 257 Kan. 856, 872, 896 P.2d 1077 (1995); *State v. Walker,* 252 Kan. 279, 297, 845 P.2d 1 (1993).

The defendant did not object to the instructions given, nor did he request any lesser included offense instructions for the charge of premeditated first-degree murder. K.S.A. 2002 Supp. 22-3414(3) provides:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

The failure to give an instruction " ' "is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict." ' " *State v. Sims,* 262 Kan. 165, 172, 936 P.2d 779 (1997) (quoting *State v. Valentine,* 260 Kan. 431, 433, 921 P.2d 770 [1996]).

Second-degree murder is: "The killing of a human being committed: (a) Intentionally; or (b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 2002 Supp. 21-3402.

Involuntary manslaughter is "the unintentional killing of a human being committed: (a) Recklessly; (b) in the commission of, or attempt to commit, or flight from any felony, other than an inherently dangerous felony as defined in K.S.A. 21-3436 . . .; or (c) during the commission of a lawful act in an unlawful manner." K.S.A. 2002 Supp. 21-3404.

The district court has an affirmative duty to instruct the jury regarding all lesser included crimes that are established by the evidence regardless of whether the evidence is weak or inconclusive. *State v. Davis,* 268 Kan. 661, 681, 998 P.2d 1127, *cert. denied* 531 U.S. 855 (2000). An instruction on a lesser included crime, however, is not required if the jury could not reasonably convict

the defendant of the lesser crime based on the evidence presented. *Douglas*, 274 Kan. at 103; *Davis*, 268 Kan. at 681.

The defendant contends that Steward's statement that he wanted to "kick the fag's ass" provides evidence that would support these lesser included instructions, reasoning as follows:

"If a person goes to a residence with intent to commit aggravated battery, but ends up causing such severe injuries that the victim dies, because the killing is not premeditated, a reasonable juror can find second-degree murder, and because the killing is not intentional, a reasonable juror can find involuntary manslaughter."

While the evidence in this case supports the jury verdict on premeditated murder, it provides no basis for a jury verdict on second-degree murder or voluntary manslaughter. "Premeditation does not have to be present before a fight, quarrel, or struggle begins. Premeditation is the time of reflection or deliberation. Premeditation does not necessarily mean that an act is planned, contrived, or schemed beforehand." *State v. Scott*, 271 Kan. 103, 108, 21 P.3d 516, *cert. denied* 534 U.S. 1047 (2001). Premeditation may be inferred by the jury from various circumstances, including (1) the nature of the weapon used, (2) the lack of provocation, (3) the defendant's conduct before and after the killing, (4) threats and declarations of the defendant before and during the occurrence, or (5) the dealing of lethal blows after the deceased was felled and rendered helpless. *State v. Decker*, 275 Kan. 502, Syl. ¶ 5, 66 P.3d 915 (2003).

The defendant left with Steward, whose stated intention was to "kick the fag's ass and take his shit." They returned with Eads' CD player and left again after the defendant told his girlfriend they were going to wipe off fingerprints. A fire which was later determined to have been intentionally set was reported at Eads' dwelling the same time the defendant returned to the Christner residence. Eads was discovered some time later with several blunt force injuries and a stab wound to his head. Eads' injuries were severe enough to expose the bone and injure his brain. The coroner opined that Eads was still alive at the time of the intentionally set fire and that he sustained burns over 50% of his body. This evidence supports the conclusion that the defendant had the time and

the opportunity to think about intentionally killing Eads. The defendant's fingerprint was found on the computer equipment from Eads' residence in the trunk of a car the defendant had borrowed, and the defendant attempted to pawn this stolen equipment the next morning. A stone with Eads' blood on it was found in the trunk and Eads' blood was on the defendant's jeans.

The above circumstances echo and support the five circumstances from which this court has said an inference of premeditation may arise. See 275 Kan. 502, Syl. ¶ 5.

(1) The nature of the weapons used in this case consisted of a candlestick holder with blood and human hair on it found at the scene, a wooden staff with blood and biological matter on it, a stone with Eads' blood on it, and a knife that the autopsy indicated was used to make a stab wound to Eads' head. Finally, a fire was intentionally set resulting in smoke inhalation and thermal burns which contributed to Eads' death. Eads' injuries were severe enough to expose the bone and injure his brain.

(2) Other than the victim's attempt to sell cocaine to Steward in exchange for a blow job, there is no evidence to suggest any provocation for the killing. The evidence establishes just the opposite and supports the inference that the victim's sexual orientation provoked Steward and the defendant.

(3) Conduct before and after the killing indicates that a threat was made by Steward and shared with the defendant. At a time when the victim was still alive, Steward and the defendant returned to his home and intentionally set it on fire, which together with head trauma caused the death of the victim. After the killing, the defendant attempted to sell the victim's property taken from his home the night of the killing.

(4) Threats and declarations of the defendant before and during the occurrence consist of Steward making threats before the killing, which threats were joined in by the defendant, that they wanted to beat the victim and steal items from him. Steward and the defendant returned to the victim's house declaring that they intended to destroy evidence of their presence in the house. Upon their return, a fire was intentionally set, resulting in the final cause of the victim's death.

(5) The dealing of lethal blows after the deceased was felled and rendered helpless is supported in this case by the intentionally set fire. Strong circumstantial evidence suggests that the victim's house was intentionally set on fire, which was a lethal blow to the deceased after he was rendered helpless by the trauma to his head.

Under the circumstances of this case, we conclude that there was no reasonable possibility a jury would have found the defendant guilty of intentional second-degree murder or voluntary manslaughter. The trial court had no duty to instruct the jury on these charges and its failure to do so was not erroneous.

Affirmed.