No. 81,959

STATE OF KANSAS, *Appellee*, v. REED J. SIMKINS, *Appellant*.

(3 P.3d 1274)

Opinion filed April 21, 2000.

*David E. Roberts*, of Hutchinson, argued the cause and was on the brief for appellant.

*Jared S. Maag*, assistant attorney general, argued the cause, and *Stephen D. Maxwell*, assistant attorney general, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Reed J. Simkins appeals from his convictions of premeditated first-degree murder and battery. He claims the following trial errors require reversal of his convictions: (1) the trial court's refusal to instruct on the lesser included offense of voluntary manslaughter, (2) the joinder of the murder and battery charges for one trial and the admission of a prior battery, and (3) the trial court's instruction on the presumption of intent. We affirm.

Larry Bornholdt, age 68, died in the Hutchinson hospital on September 2, 1997, as the result of a massive chest wound caused by a shotgun blast. The defendant, Reed Simkins, age 69, was charged with one count of premeditated first-degree murder in connection with the death of Bornholdt, and one count of misdemeanor battery in connection with another incident occurring the same day. In order to adequately address the claimed errors it is necessary to detail the history of the parties, including an incident which occurred approximately 5 years before the death of Bornholdt.

## The Parties

Larry Bornholdt was married to Helen Bornholdt, and they resided together in Hutchinson until his death. They also owned property in Rice County near the Reno County line, where they raised cattle. The defendant, and his wife Bonnie Simkins, were

neighbors of the property owned by the Bornholdt's in Rice County.

## The 1992 Affair

Five years prior to his death, Larry Bornholdt had an affair with the defendant's wife, Bonnie. The affair lasted but a few months; Bonnie did not tell the defendant. Several months after the affair ended, Helen told the defendant about the affair. Helen and the defendant confronted Bonnie concerning the affair, at which time the defendant grabbed and hit Bonnie. Shortly thereafter, following a confrontation among all four persons involved, Larry Bornholdt promised his wife and Bonnie promised her husband that they would not speak to each other again. From time to time following the incident, the defendant and Bornholdt would encounter each other as each went about his property, but they did not converse.

## The present charges

On September 2, 1997, Larry Bornholdt left his home in Hutchinson to check his cattle on the land near the defendant's home in Rice County. That same day, the defendant went dove hunting, returned to the house, and told his wife that he was going fishing at a slough approximately 3 miles away.

Soon thereafter, Bonnie left her house to drive into Hutchinson to a church meeting. As she was driving down the road, she saw Larry Bornholdt standing next to his Ford Bronco. She stopped to talk to him. She then noticed in the distance the defendant driving towards them. Bornholdt got into his vehicle and drove away.

Bonnie testified that she then drove on and the defendant motioned for her to stop. The defendant got out of his pickup truck, walked over to her car, and asked if she had been talking to Bornholdt. When she answered that she had, the defendant hit her on the arm. She got out of the car and tried to talk to the defendant but the defendant kicked her in the shin. The defendant then drove off towards their home and Bonnie continued driving toward Hutchinson.

Bonnie decided to return home to talk with the defendant. When she got near her driveway, she saw Larry Bornholdt's Ford

Bronco crashed into a tree. Bornholdt was slumped inside. The defendant was standing in the middle of the road behind the Bronco. He looked as though he was in shock. The defendant told her that they needed to call 911 but Bonnie thought that emergency personnel would not be able to find them in time. She and the defendant drove Bornholdt to the Hutchinson hospital. The defendant told Bonnie that he and Bornholdt had gotten into a fight over the gun and Bornholdt was shot.

The defendant testified that the revelation of his wife's affair with Bornholdt devastated him and his marriage almost collapsed. However, he and Bonnie were able to reconcile.

According to the defendant, seeing his wife talking to Bornholdt on the day of the incident made him angry, although most of his anger was directed towards Bonnie for breaking her promise not to talk to Bornholdt. He admitted hitting Bonnie on the arm and kicking her in the shin. He then drove toward his home. He denied trying to find Bornholdt, stating that he had no idea where Bornholdt had driven to. However, as he was nearing his driveway he saw Bornholdt coming from the east.

The defendant pulled to the side of the road. According to the defendant, he wanted to talk to Bornholdt and warn him to stay away from his wife. To assist in this warning, the defendant removed his shotgun from his truck and loaded it.

The defendant testified that Bornholdt drove up even with him and stopped. The defendant walked to the passenger side of the Bronco and tapped the barrel of his shotgun on the front window. The defendant testified that he then stuck the barrel of the shotgun into the Bronco and pointed it at an angle toward the roof. The defendant stated that his intention was to warn Bornholdt to stay away from his wife and that he did not point the gun at Bornholdt.

According to the defendant, Bornholdt suddenly grabbed the barrel of the gun and attempted to pull the gun out of his hands. The defendant pulled back and his finger accidentally pulled on the trigger, firing the shotgun and hitting Bornholdt. The Bronco then took off, hitting a tree. He testified that he did not really remember his actions after that. The next thing he remembered was walking down the road and his wife driving up.

Scott Sellers; a doctor at the Hutchinson hospital, testified that he spoke to the defendant at the hospital when Bornholdt was brought in. The defendant told him that he stuck the shotgun in the window of the truck, Bornholdt grabbed it, and it went off. The defendant was pale and trembling slightly.

Sergeant Fred Owston of the Hutchinson Police Department went to the hospital to check on the shooting. While there, he talked to the defendant whom he knew slightly. The defendant told Owston that he had shot the victim and that it was a long and complicated story. The defendant told officers that the shotgun was in his truck, which was parked in the yard in front of his home.

The State's evidence cast doubt on the defendant's version of the events. Dr. Deborah Johnson, the coroner who performed the autopsy on Bornholdt, testified that from the position of the wound it was physically impossible for Bornholdt to have been grabbing or attempting to grab the gun when it was fired. Robert Cilwa of the Kansas Bureau of Investigation forensics lab opined that as a result of distance testing he completed, he concluded that the muzzle of the gun was at a distance of greater than 3 feet but less than 8 feet from Bornholdt when it was fired. However, the defendant's expert on ballistics criticized Cilwa's testing for not taking into account that the shot could have come at an angle, and opined that the muzzle of the gun was at a distance of 1 to 2 1/2 feet when it was fired.

During the instructions conference, the defendant submitted a proposed jury instruction which would have limited the jury's consideration of the defendant's hitting of his wife in 1992 to his present battery charge. The trial court refused to give this instruction. The defendant also objected to the giving of the following instruction based on PIK Crim. 3d 52.06:

"Evidence has been admitted tending to prove that the defendant committed crimes in December 1992, other than the present crimes charged. This evidence may be considered solely for the purpose of proving the defendant's motive and intent."

Further, the defendant objected to the trial court's instruction regarding the presumption of intent. The trial court overruled these

objections. The trial court also refused to give an instruction on voluntary manslaughter as a lesser included offense of premeditated first-degree murder.

The defendant was found guilty of premeditated first-degree murder in the death of Bornholdt and of misdemeanor domestic battery in hitting and kicking Bonnie, on the day of the murder. The defendant was sentenced to life in prison on the murder conviction.

## Discussion and Analysis

### (1) The trial court's refusal to instruct on voluntary manslaughter.

The defendant argued that trial evidence required the court to instruct on the lesser included offense of voluntary manslaughter. In submitting his proposed instruction to the trial court, the defendant argued that voluntary manslaughter was a lesser included offense of premeditated murder and that the victim's grabbing of the shotgun was evidence of a "sudden quarrel." In addition to the above arguments, he contends that the trial court's failure to give such an instruction requires a reversal of his conviction.

A trial court is required to instruct the jury not only as to the crime charged but also as to all lesser included crimes of which the accused might be found guilty. *State v. Sanders*, 258 Kan. 409, 413, 904 P.2d 951 (1995). The duty arises when the evidence as a whole, viewed in the light most favorable to the defendant, would justify a verdict on the lesser included offense. *State v. Bell*, 266 Kan. 896, 905, 975 P.2d 239 (1999). In analyzing whether an instruction on a lesser included offense is necessary, there is some weighing of the evidence, but the weighing of the evidence is not a retrial of the case. *State v. Sanders*, 258 Kan. at 413.

Upon review of the record, we conclude that there was no evidence from which a jury could have found the defendant guilty of voluntary manslaughter. The State's theory was that the killing was premeditated and intentional. The defendant's theory was that the killing was accidental, justifying, at most, second-degree unintentional murder or involuntary manslaughter. In order for a jury to have found the defendant guilty of voluntary manslaughter, it would have had to have found that the defendant intentionally

killed Bornholdt upon a sudden quarrel or in the heat of passion. See K.S.A. 21-3403(a).

The defendant argued that there was evidence of a sudden quarrel in that Bornholdt attempted to take the rifle from the defendant. However, the defendant claimed that during, and as a result of, this struggle, the gun went off accidentally. If this were true, the defendant would have been guilty of involuntary manslaughter or at most, second-degree unintentional murder. There was no evidence that during the alleged struggle, the defendant intentionally shot Bornholdt, which is a required element for voluntary manslaughter.

Moreover, the crime of voluntary manslaughter requires that there must be evidence that the intentional killing was the result of severe provocation. See *State v. Bell*, 266 Kan. at 918. The test for whether severe provocation exists is objective and the provocation must be sufficient to cause an ordinary person to lose control of his or her actions. 266 Kan. at 918. It is clear that Bornholdt's alleged act in attempting to grab the shotgun from the defendant would not pass this test. The defendant does not argue that Bornholdt's action in talking to his wife, coupled with the affair 5 years earlier, constituted severe provocation. The defendant testified that he was primarily upset by the fact that his wife had broken her promise to have nothing further to do with Bornholdt, and he was not really as angry at Bornholdt as he was with his wife.

No duty to instruct the jury on a lesser included offense exists where the evidence as a whole, viewed in the light most favorable to the defendant, could not reasonably support a jury verdict on the lesser included offense. *State v. Bell*, 266 Kan. at 905. The evidence could not support a jury verdict of voluntary manslaughter, and the trial court did not err in refusing to instruct on that offense.

(2) The joinder of the murder and battery charges for one trial and the admission of prior battery.

The defendant argues that the trial court erred in refusing to sever the charges of first-degree murder and battery. According to the defendant, the charge of premeditated murder of Bornholdt

and the charge of misdemeanor battery of Bonnie were not suffi-
ciently connected, and the evidence of the battery prejudiced the
jury on the murder charge.

The defendant also contends that this prejudice was amplified
by the court's failure to give an instruction limiting proof of the
prior 5-year-old battery to the presently charged domestic battery,
and in giving an instruction which informed the jury that it could
use proof of other crimes in regard to the murder charge.

a. Severance

K.S.A. 22-3202(1) provides:

"Two or more crimes may be charged against a defendant in the same com-
plaint, information or indictment in a separate count for each crime if the crimes
charged, whether felonies or misdemeanors or both, are of the same or similar
character or are based on the same act or transaction or on two or more acts or
transactions connected together or constituting parts of a common scheme or
plan."

Whether a defendant will be tried on separate charges in a single
trial is a matter within the discretion of the trial court, and the trial
court's decision will not be disturbed absent an abuse of that dis-
cretion. If reasonable persons could differ about the propriety of
the trial court's decision, there is no abuse of discretion. *State v.
Barksdale*, 266 Kan. 498, 507, 973 P.2d 165 (1999).

The domestic battery of Bonnie and the shooting of Bornholdt
are connected in that both occurred within a short period of time
after the defendant saw Bonnie talking with Bornholdt on the road-
way. Both the battery and the murder grew out of an admitted
prior affair between Bonnie and Bornholdt, and a promise by Bon-
nie to the defendant not to talk with Bornholdt again. Given this
connection, we have no hesitancy in concluding that the trial court
did not abuse its discretion in joining both offenses for a single
trial.

b. Evidence of the defendant's 1992 battery.

The second distinct question raised by this issue is whether the
trial court erred in allowing evidence of the defendant's 1992 bat-
tery of his wife to be used as evidence regarding the murder charge

and denying a limiting instruction which would have limited the evidence regarding that battery to the current battery charge.

The trial court determined that the 1992 battery was admissible under K.S.A. 60-455 in order to show the defendant's motive or intent and gave a limiting instruction based on PIK Crim. 3d 52.06 limiting consideration of the evidence to motive or intent.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Three requirements must be met in order to introduce evidence under K.S.A. 60-455: (1) The evidence is relevant to prove one of the facts specified in the statute; (2) the fact is a disputed, material fact; and (3) the probative value of the evidence outweighs its potential prejudice. If the requirements for admission are met, the scope of appellate review is limited to whether the trial court abused its discretion. *State v. Mitchell*, 262 Kan. 434, 441, 939 P.2d 879 (1997).

The defendant's theory of defense was that the discharge of the shotgun was an accident. He was charged with first-degree premeditated murder. Thus, the defendant's motive and intent were disputed material facts. The only question is whether the defendant's action 5 years prior to the incident was probative on that issue and, if so, whether the probative value outweighed the prejudice of admitting the evidence. The defendant's striking of Bonnie 5 years earlier was directly related to his possible motive and intent regarding the shooting of Bornholdt. Although remote in time, the 1992 battery of his wife demonstrates his reaction to his wife's affair and further serves to explain his later reaction to seeing his wife and the victim talking to one another, thus showing his possible motive and intent to harm the victim.

The trial court determined that the probative value of the 1992 battery outweighed the prejudicial effect of the evidence. The dan-

ger, of course, is that the jury could decide that because the defendant struck his wife 5 years earlier, he is a bad person and, thus, was likely to have intentionally rather than accidentally shot the victim. However, the connection between the 1992 battery, the promise of his wife not to talk with the victim, the recent domestic battery of his wife, and the shooting of Bornholdt support the trial court's conclusion that the probative value of the evidence on motive and intent outweighed any prejudicial effect upon the defendant. We conclude that the trial court's decision that the evidence was more probative than prejudicial is not a decision with which no reasonable person would agree. Moreover, the trial court gave a jury instruction limiting consideration of the 1992 incident to motive and intent. Thus, under our standard of review, the trial court did not err.

(3) Instructing with regard to the presumption of intent.

The defendant's final argument is that the trial court erred in giving PIK Crim. 3d 54.01 regarding presumption of intent. The defendant contends that the giving of this instruction operated to shift the burden of proof to the defendant under the facts.

The court's jury instruction No. 4 followed PIK Crim. 3d 54.01, which states:

"Ordinarily, a person intends all of the usual consequences of (his) (her) voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

PIK Crim. 3d 54.01 explicitly instructs the jury that it may infer that a person intends all the natural and probable consequences of his or her ordinary acts but that the jury may also reject that inference. It further clearly informs the jury that the burden of proof does not shift to the defendant. Thus, the express language of the instruction given undermines the defendant's argument.

Under the circumstances in this case, the jury could infer from the defendant's conduct that he intended the natural consequences of his voluntary act. This instruction did not tell the jury, however, that it could infer intent from the defendant's pointing the barrel

of the gun inside the truck unless the jury believed that the natural and probable consequence of that act was the shooting of the defendant or unless the jury refused to believe that the defendant's shooting was an accident.

The defendant also argues that the State, in its closing argument, informed the jury that it could find the defendant intended to kill Bornholdt because he admitted to pointing the barrel of the gun inside the truck. However, the record reveals that the State, in commenting on the instruction, informed the jury:

"Instruction Number 4, it's exactly the way it reads. It says, ordinarily a person intends—intends all of the usual consequences of their voluntary acts. It's the law's inference that you can assume that he intended the consequences of what he did. And it goes on, you can consider that, and that's the law."

Although not artfully phrased by the prosecutor, the statement does not instruct the jury to find that the defendant intended to kill Bornholdt simply because he pointed the gun inside Bornholdt's truck. We conclude that neither PIK Crim. 3d 54.01 nor the State's closing argument regarding the instruction shifted the burden of proof to the defendant.

Affirmed.