No. 91,163

STATE OF KANSAS, *Appellee*, v. ERICK DONALDSON, *Appellant.*

112 P.3d 99

Opinion filed June 3, 2005.

*Carl F.A. Maughan*, of Maughan Hitchcock LC, of Wichita, argued the cause and was on the briefs for appellant.

*Debra S. Byrd Peterson*, deputy district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

LARSON, J.: This is the direct appeal by Erick Donaldson of his convictions by a jury of first-degree felony murder, K.S.A. 21-3401, and sale of cocaine, K.S.A. 65-4161(a).

Donaldson raises nine issues on appeal, including: (1) improper joinder of charges, (2) insufficient evidence to support felony-murder conviction, (3) erroneous aiding and abetting instruction, (4) erroneous endorsement of State witness during trial, (5) prosecutorial misconduct during closing argument, (6) erroneous amendment of complaint, (7) erroneous admission of defendant's confession, (8) violation of fair trial by cumulative errors, and (9) insufficient evidence to support the sale of cocaine conviction.

Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1) (conviction of an off-grid crime with sentence of life imprisonment).

This is a companion case to our recent decision in *State v. Harris*, 279 Kan. 163, 105 P.3d 1258 (2005).

We find no reversible error and affirm both convictions and the resulting sentences.

We first set forth the facts that connect both convictions. We will then discuss each alleged error.

On December 31, 2001, Donaldson and his friend, Lana Jackson, decided to "jack" Benny Zeigler for $3,000 to $4,000 with a phony drug deal. They were going to sell baking soda, and Jackson was to convince Zeigler that it was cocaine.

Donaldson and Zeigler knew each other. Afraid Zeigler would be suspicious if he saw him, Donaldson asked Vernon Harris to help Jackson steal Zeigler's money. Donaldson, however, accompanied Jackson and Harris so he could receive part of the money. To avoid being seen, Donaldson was lying down on the backseat of Jackson's car.

Jackson took a gun with her in case something went wrong. She gave the gun to Harris before they met with Zeigler. They arranged to meet Zeigler at Trisha Shelinbarger's house.

Just before the shooting, two black men and a woman Shelinbarger recognized as Jackson approached her house and knocked on the door. Shelinbarger told her daughters to refuse to allow them in the house. Shelinbarger watched as the three individuals returned to the street.

Shelinbarger saw the two men begin fighting. Jackson sprayed Zeigler with mace. Harris demanded Zeigler's money and during the ensuing struggle, Harris shot Zeigler in the head, resulting in Zeigler's death. Jackson and Harris jumped in the car and sped away.

While they were driving away, Harris was counting the money. Donaldson thought Harris had $650 but claimed he never received any of the money.

An investigation led police to Jackson, who told police that Harris shot Zeigler while trying to rob him during a drug sale. Harris

ultimately told Wichita Detective Robert Chisholm that Donaldson was involved as the shooter.

Detective Chisholm issued a pick-up order for Donaldson in January 2002, so he could be questioned about Zeigler's murder. Donaldson left Wichita for some time to avoid arrest. In the fall of 2002, he returned to Wichita and made a videotape for Harris stating he (Donaldson) was in the backseat of the car when Zeigler was killed and that Harris was not there.

Donaldson avoided Wichita police until October 26, 2002, when Wichita police received a tip that Donaldson could be contacted using his girlfriend's cell phone. Officer Eddie Padron called the number he was given and spoke with Donaldson. Officer Padron said his name was "T" and asked to buy $100 of crack cocaine. Donaldson told Officer Padron that he had the drugs, and the two arranged to meet at a parking lot in Wichita.

Because he was in his uniform, Officer Padron contacted Officer Kevin Kochenderfer, another Wichita police officer who was working undercover with a confidential informant (CI), to meet with Donaldson. Officer Kochenderfer and the CI went to the designated parking lot and waited for Donaldson. Donaldson, accompanied by two other men, drove into the parking lot and parked beside Officer Kochenderfer's car near the CI. The CI got out of the car, spoke with Donaldson, and started to hand Donaldson the money for the drugs.

Before Donaldson could hand over the drugs to the CI, Officer Kochenderfer became concerned that Donaldson recognized him as a police officer. He pulled out his badge and gun and ordered Donaldson to exit the vehicle. Seconds later, several other officers, including Officer Padron, arrived to assist in arresting Donaldson.

Officer Kochenderfer saw Donaldson drop a small package out of the window of the vehicle before Donaldson got out. When Donaldson got out of the vehicle, he stomped his foot on the ground, complaining that an old gunshot wound caused his leg to go numb. After the officers arrested Donaldson, they found a small package of crack cocaine in the area where Donaldson had been standing and stomping.

Before Donaldson was taken to jail, he made statements about the Zeigler murder. Donaldson told officers he knew why detectives wanted to talk to him. He said he was glad he had finally been caught, and he was tired of looking over his shoulder all the time. Donaldson said he, a female, and another man set up a spoof drug deal involving 4 ounces of baking soda. Since Donaldson had a problem with Zeigler, he stayed in the car and hid. The female maced Zeigler, "Vernon" ended up shooting Zeigler, and the female, "Vernon," and Donaldson fled.

Detective Chisholm met Donaldson at the jail. Donaldson agreed to talk to him about Zeigler's murder. Donaldson initially told Detective Chisholm the same story he told on the videotape he had made for Harris. But, when confronted with Harris' statement that Donaldson was the shooter, Donaldson admitted he was there but said Harris shot Zeigler.

Donaldson was charged with felony murder based on the underlying felony of theft for Zeigler's death and sale of cocaine. Prior to trial, the State moved to consolidate the two charges into one trial and added an alternative count of felony murder based on the underlying felony of aggravated robbery. The motions were granted. Donaldson was convicted of all charges. Donaldson was sentenced to life imprisonment for felony murder and 44 months' imprisonment for the sale of cocaine conviction, to run consecutive to his sentence for felony murder. Donaldson appeals both his convictions and his sentences.

*Improper Joinder*

Donaldson first argues it is reversible error for the trial court to consolidate the felony murder and cocaine sale charges into one trial because they do not qualify under the joinder statute.

The trial court's decision to grant the State's motion to consolidate is reviewed on appeal using an abuse of discretion standard of review. The trial court's decision will not be disturbed unless no reasonable person would agree with the trial court's decision. *State v. Plaskett*, 271 Kan. 995, 1018-19, 27 P.3d 890 (2001). Even if it is demonstrated that the trial court abused its discretion by consolidating the charges, the defendant has the further burden of

establishing prejudice that requires reversal. *State v. Hill*, 257 Kan. 774, 780, 895 P.2d 1238 (1995).

We are not constrained to give credence to Donaldson's argument that we should adopt de novo review for issues such as this. It is essential that trial judges be given necessary latitude in the conduct of trials without appellate courts reviewing judgment issues under a de novo standard. We retain abuse of discretion as our standard of review of consolidation issues.

K.S.A. 22-3202(1) authorizes the joinder of charges and provides:

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

In requesting consolidation, the State argued the crimes charged were acts or transactions that are related or connected together in that (1) both involved drug transactions, (2) the sale of cocaine charge was directly connected to efforts to locate Donaldson for the murder of Zeigler, and (3) when Donaldson was arrested he stated he knew why detectives wanted to talk to him and he was glad he had finally been caught, and he made statements before being taken to jail on the cocaine charge about the Zeigler murder. The State further argued both events were cocaine related and the jury was clearly instructed that: "[e]ach crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge." Finally, the State argues there was substantial evidence and admissions that existed as to each charge.

Donaldson argues that the charges are not connected together or of the same or similar character as required by K.S.A. 22-3202(1). Donaldson highlights the differences between the crimes, noting the distinction between the elements of the crimes, the 10-month interval between the crimes, the use of a firearm in only

one of the crimes, the different locations of the crimes, and his familiarity with the victim in only one of the crimes.

We have broadly construed the phrase "connected together" in K.S.A. 22-3202(1) to apply in three situations. The first situation occurs when the defendant provides evidence of one crime while committing another. *State v. Anthony*, 257 Kan. 1003, 898 P.2d 1109 (1995). The State argues that Donaldson's crimes are "connected together" under the first situation, when the defendant provides evidence of the crime while committing another. The State relies on *Anthony*, where a drug sale was made to an undercover police officer and the seller bragged about a separate murder and robbery during the drug sale. The *Anthony* court held the crimes were connected together by the incriminating statements made during the drug sale. 257 Kan. at 1016-17. Under our facts, a connection exists between the crimes as argued by the State, although certainly not as directly as in *Anthony*.

A second situation where the court has found charges to be "connected together" under K.S.A. 22-3202(1) occurs when some of the charges are precipitated by other charges. See, *e.g., State v. Dreiling*, 274 Kan. 518, 555, 54 P.3d 475 (2002) (affirming the joinder of first-degree premeditated murder and conspiracy to commit murder with conspiracy to commit perjury because the perjury would have prevented evidence of the defendant's motive for murder); *State v. Flynn*, 274 Kan. 473, 481, 55 P.3d 324 (2002) (same as *Dreiling*); *State v. Walker*, 244 Kan. 275, 279-80, 768 P.2d 290 (1989) (upholding the joinder of terroristic threat charges with aggravated sodomy, endangering a child, and child abuse charges because the threat against a hospital worker occurred as a result of the child victim being hospitalized from being abused); *State v. Pondexter*, 234 Kan. 208, 216-17, 671 P.2d 539 (1983) (consolidating charges for unlawful possession of a firearm and aggravated assault of a law enforcement officer with charges of burglary and attempted murder because the intended murder victim was a witness against the defendant for the first two charges); *State v. Moore*, 226 Kan. 747, 750, 602 P.2d 1359 (1979) (joining charges of aggravated robbery and kidnapping with charges for corruptly influencing a witness and deprivation of property because the de-

fendant committed the second two offenses while trying to avoid a conviction for the first two charges).

The third situation occurs when all of the charges stem from a common event or goal. See, *e.g., State v. Simkins*, 269 Kan. 84, 91, 3 P.3d 1274 (2000) (upholding joinder of first-degree murder and domestic battery against two different victims because both charges resulted from the victims' prior extramarital affair and the defendant's observation of the victims talking together); *State v. Stewart*, 219 Kan. 523, 528, 548 P.2d 787 (1976) (allowing joinder of charges for an aggravated battery against Sanders and a later aggravated robbery against Sanders' wife because both were based on the defendant's goal to get Sanders to repay a debt).

Although we might individually have ruled differently on the consolidation motion than did the trial court, it is difficult, under an abuse of discretion standard of review, to hold no reasonable person would agree with the trial court's decision. The crimes both involved drug sales of cocaine, Donaldson was apprehended for the felony-murder charge as the result of the drug sale. His comments at the drug scene arrest immediately connected him to the Zeigler murder. His statements were clearly admissible evidence.

Donaldson has contended that prejudice existed but has not shown prejudice in any direct and tangible manner. The court instructed the jury to decide each crime separately. The jury is presumed to follow the instructions to decide each charge separately. *State v. Cromwell*, 253 Kan. 495, 510, 856 P.2d 1299 (1993). We hold the trial court's decision to allow consolidation under K.S.A. 22-3202(1) was not an abuse of discretion sufficient to constitute reversible error under the facts of this case.

### Sufficiency of Evidence to Support Felony-Murder Conviction

Donaldson claims his conviction for felony murder is not supported by sufficient evidence. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reason-

able doubt. *State v. Hanson*, 277 Kan. 855, 856-57, 89 P.3d 544 (2004).

Donaldson's first argument is that his testimony denying involvement in both crimes must be given prime consideration. Appellate courts do not reweigh evidence and determine the credibility of witnesses. To do so invades the province of the jury. See *State v. James*, 276 Kan. 737, 753, 79 P.3d 169 (2003). The jury properly weighed the evidence, and there was substantial, credible evidence to support its verdict. It was not unreasonable for the jury to disregard Donaldson's testimony at trial.

Donaldson next asserts there was insufficient evidence to show he aided and abetted Jackson and Harris in killing Zeigler. He limits his involvement to "mere association" with the perpetrators of the crime. His reliance on *State v. Green*, 237 Kan. 146, 697 P.2d 1305 (1985), is misplaced. *Green* is completely different factually.

In *State v. Wakefield*, 267 Kan. 116, 142, 977 P.2d 941 (1999), we said: "Any person who counsels, aids, or abets in the commission of any offense may be charged, tried, convicted, and sentenced in the same manner as if he or she were a principal." Our *Wakefield* opinion relied on *State v. Smolin*, 221 Kan. 149, 153, 557 P.2d 1241 (1976), and stated:

"In the absence of anything in a person's conduct showing a design to encourage, incite, aid, abet, or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that the person assented to the commission of the crime, lent his or her countenance and approval thereto, and thereby aided and abetted the commission of the crime." 267 Kan. at 121.

The evidence showed Donaldson helped plan the bogus drug transaction and called in Harris to .assist. Donaldson expected to receive part of the proceeds. He knew Jackson had a gun. He went along but hid in the car because he knew Zeigler and did not want to spoil the deal. Zeigler's homicide was reasonably foreseeable from the commission of either theft or aggravated robbery.

Viewed in the light most favorable to the State, there is clearly sufficient evidence to support the jury's finding that Donaldson

aided and abetted the commission of the felony theft or aggravated robbery that led to Zeigler's murder.

Donaldson's arguments that there was no evidence of the amount stolen to support felony theft and no evidence that theft by deception is an inherently dangerous crime are without merit.

Testimony showed the plan was to "jack" somebody for $3,000 to $4,000. Donaldson's statement to Detective Chisholm was that Harris had counted approximately $650 as his share. This is clear evidence as to the amount stolen.

The State charged Donaldson with felony murder based on felony theft as defined by K.S.A. 2004 Supp. 21-3701(a)(2), "obtaining by deception control over property." This is an inherently dangerous felony pursuant to K.S.A. 2004 Supp. 21-3436(a)(8).

The jury in this case was instructed, without objection by the defendant, that the underlying felony was "[t]hat the defendant obtained or exerted unauthorized control over the property," which is the language of K.S.A. 2004 Supp. 21-3701(a)(1). However, Donaldson does not complain about this instructional error on appeal. Rather, he contends the State failed to show that theft by deception was inherently dangerous to human life. Such is not necessary, as K.S.A. 2004 Supp. 21-3436(a) states that "[a]ny of the following felonies shall be deemed an inherently dangerous felony." and the list includes under subsection (8) "felony theft under subsection (a) or (c) of K.S.A. 21-3701 and amendments thereto," without further limitation. This makes Donaldson's appellate argument fail.

No claim of error is made as to the language listing the different subsection of K.S.A. 21-3701(a) in the complaint and instruction. This appears to have been inadvertent and unnoticed by the trial court or either counsel below. It was first pointed out in the State's brief on appeal. We hold it does not entitle defendant to relief because no prejudice has been shown. See K.S.A. 2004 Supp. 22-3201(b).

Additionally, and more importantly, the jury also found Donaldson guilty of felony murder with the underlying felony of aggravated robbery. There was clearly sufficient competent evidence of the aggravated robbery in this case. Donaldson makes no argument

to the contrary. There is no basis for setting aside Donaldson's felony-murder conviction based on the insufficiency of the evidence. *State v. Boone*, 277 Kan. 208, 218, 83 P.3d 195 (2004) (quoting *State v. Davis*, 247 Kan. 566, 573, 802 P.2d 541 [1990]), states that

" '[a] defendant's conviction for felony murder need not be vacated because of a rule requiring that a general guilty verdict be set aside if the jury was instructed that it could find the defendant guilty of felony murder on any two or more independent felonies, and one of the felonies is insufficient, if the jury expressly found a legally sufficient felony to support the murder conviction.' "

Donaldson's claim of insufficient evidence to support his felony-murder conviction does not entitle him to any relief.

### Aiding and Abetting Instruction

Donaldson next argues the trial court erroneously instructed the jury on aiding and abetting, contending there is no evidence to support such a finding.

Donaldson did not object to the aiding and abetting instruction at trial, so we apply a clearly erroneous standard of review on appeal. As we said in *State v. Bryant*, 276 Kan. 485, 491-92, 78 P.3d 462 (2003): " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citation omitted.]"

We need not repeat here what we said as to the prior argument regarding the sufficiency of the evidence to support the State's aiding and abetting theory. See *Wakefield*, 267 Kan. at 142; *Smolin*, 221 Kan. at 153. The aiding and abetting instruction was clearly proper.

### Endorsement of State's Witness During Trial

Donaldson argues the State should not have been allowed to endorse Clifton Brown as a witness during trial.

K.S.A. 2004 Supp. 22-3201(g) grants the trial court discretion over determining whether to allow a party to endorse witnesses during trial. *State v. Valdez*, 266 Kan. 774, 782-83, 977 P.2d 242 (1999). We review this issue using an abuse of discretion standard.

The test is whether the defendant's rights have been prejudiced. 266 Kan. at 782.

Donaldson listed Brown as an alibi witness approximately 1 week before trial. Since Brown was in custody, he was transported to Wichita and arrived late on the first day of Donaldson's trial. He was interviewed by Donaldson's attorney and a Wichita police department detective.

Immediately prior to the beginning of the second day of trial, the State moved to endorse Brown as a witness. Donaldson objected but did not request a continuance. Finding it was not an unfair surprise to the defendant, the trial court granted the State's motion.

Brown's testimony was not favorable to Donaldson. He said Donaldson had been at his house for 30 minutes the morning of the day Zeigler was killed and had received several phone calls from Jackson. Brown overheard Donald and Jackson discussing a robbery. Brown testified Donaldson later returned to his house looking distraught, like something had gone wrong, and told him that "shit didn't go right." Donaldson had a gun, and Brown testified he told Donaldson to leave. About a month later, Brown said he ran into Donaldson, who said he "was on the run again." Brown arranged for a friend to drive Donaldson to Nebraska.

Donaldson attempted to discredit Brown's testimony by testifying Brown had a grudge against him for causing Brown's probation to be revoked and for having sex with Brown's wife. Brown denied that he had ill will against Donaldson for either reason.

K.S.A. 2004 Supp. 22-3201(g) requires the State to endorse the names of its witnesses on the complaint, information, or indictment. The State may endorse additional witnesses in accordance with the trial court's rulings. K.S.A. 2004 Supp. 22-3201(g). The purpose for requiring the State to include the names of its witnesses on the complaint, indictment, or information is to prevent surprise by allowing the defendant an opportunity to interview and examine the witnesses prior to trial. *Valdez*, 266 Kan. at 782.

This is simply a case of a witness who did not, under oath, testify as a defendant expected. There was no surprise once Brown was

interviewed. Brown was effectively cross-examined, and Donaldson explained why Brown testified as he did.

We said in *State v. Shelby*, 277 Kan. 668, Syl. ¶ 1, 89 P.3d 558 (2004), in discussing the late endorsement of a witness, that the defendant must have been surprised and must also have objected and been denied a request for continuance of the trial. There was no surprise here, no request for continuance, and clearly no reversible error.

### Prosecutorial Misconduct During Closing Arguments

Donaldson claims he was denied a fair trial because of the prosecutor's comments during closing argument.

There was no objection made at trial to the now complained-of comments. This historically meant there is no basis for finding reversible error.

However, if the prosecutor's comments are so egregious as to violate a defendant's right to a fair trial and deny his or her Fourteenth Amendment right to due process, an appellate court may find reversible error without a contemporaneous objection. If the appellate court determines the claimed conduct may have violated the defendant's right to a fair trial, it will consider the error. *State v. Ly*, 277 Kan. 386, 392, 85 P.3d 1200 (2004).

In considering the alleged errors, we must follow the directions of *State v. Tosh*, 278 Kan. 83, Syl. ¶¶ 1, 2, 91 P.3d 1204 (2004), which state:

"A two-step analysis is applied to allegations of prosecutorial misconduct. First, the court decides whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, the court must decide whether the comments constitute plain error, that is, whether the statements prejudiced the jury against the defendant and deny him or her a fair trial, thereby requiring reversal. The second step is a particularized harmlessness inquiry for prosecutorial misconduct cases."

"In the second step of the two-step analysis for alleged prosecutorial misconduct the appellate court considers three factors to determine if the prosecutorial misconduct so prejudiced the jury against the defendant that a new trial should be granted: (1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. None of these

three factors is individually controlling. Before the.third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), have been met."

See *State v. Elnicki*, 279 Kan. 47, 64-65, 105 P.3d 1222 (2005).

The essence of the defendant's argument is the prosecutor hinted and said that the defendant was a liar while bolstering the credibility of a State's witness. In contrast, the State claims the statements were fair comment on the evidence based on Donaldson's three conflicting stories and testimony. The State further relies on the presumption that the jurors weigh the evidence themselves, determine the weight and credibility to be given to a witness, and use their common knowledge and experience as they are instructed to do.

On appeal, Donaldson complains of 11 comments made by the prosecutor in closing arguments. We have examined them all in isolation and in context, and while we find several to be improper, others are nothing more than attempts to comment on the evidence in a proper persuasive manner.

For example, it is not improper to say: "All they've done is attack the credibility of police officers that did excellent police work in this case, excellent police work. What Officer Padron did in this case, quick thinking, very quick thinking." This was a fair comment on the evidence concerning the drug sale which led to Donaldson's arrest.

Donaldson objects to the prosecutor saying, when he was discussing the sale of cocaine:

"Now, the sale of cocaine, he makes a decision to sell cocaine. And folks, he's driving the car. You've heard the evidence of what happened. Again, if you don't believe that it happened the way it happened, you believe what he had to tell you, how does this guy that he doesn't even know end up with his girlfriend's phone?"

This is nothing more than pointing out inconsistencies in testimony and Donaldson's denial of involvement, which is not misconduct.

The following statement by the prosecutor relating to Brown's testimony is now claimed to be misconduct:

"But [Brown] testifies that he saw Erick Donaldson on that day, and Erick Donaldson talked to Lana Jackson about doing a juke or jack or a robbery, what-

ever words you want to call it, and that he left and he came back with a funny look on his face, and he said shit went bad and he had a gun. Clifton Brown's going to come in here and tell you that because of some unsupported allegation that Erick slept with his wife?"

This again is a fair comment on the evidence and is intended to show that Donaldson's explanation for Brown's testimony had no basis.

Donaldson objects to the prosecutor saying he should not be given any credibility. The record reflects the prosecutor said: "You have a right to use common knowledge and experience in regard to the matter about which a witness has testified. You decide how much credibility to give somebody. Erick Donaldson shouldn't be given—Erick Donaldson shouldn't be given any credibility." This statement came right after the prosecutor discussed instruction No. 5, which says: "It is for you to determine the weight and credit to be given to the testimony of each witness." This comment was followed by a discussion of why Donaldson's trial testimony was not credible. It was not an improper statement.

Donaldson says it was improper for the prosecutor to say: "He's going to make himself guilty of felony murder to help a friend?" The defendant first told Detective Chisholm the version of events as had been stated on the videotape he had made for Harris. Under that version, Donaldson knew about the bogus drug deal and that Jackson had a gun. Donaldson placed himself in the car, yet claimed he passed out. The prosecutor was appealing to the jury's common sense in assessing the credibility of the first statement, which placed Donaldson in the midst of felony murder. This was clearly proper.

We find nothing wrong with any of the previous statements objected to on appeal. Because Donaldson told at least two conflicting stories during interrogation and testified completely differently at trial, it was difficult for the prosecutor to comment on the evidence without suggesting that many untruths existed. For example, Donaldson now objects to the prosecutor saying:

"Now, you may be saying, well, how does that make Mr. Donaldson guilty when he's simply lying in the back of the car? Because he was lying in the back of the

car. If you believe otherwise, then I've got this big old bridge I own right outside San Francisco that I'd like to sell to you . . . ."

"Mr. Donaldson, well, he denies everything, everything. If he was charged with believing that the sky was blue, he would deny that it was blue."

"Well, it became very apparent while Mr. Donaldson was testifying that he became caught in the web of his own untruths and he couldn't extract himself. Like when your mother tells you, once you start telling a lie you get into some trouble."

"Why does he tell the officers when he's busted for sale of cocaine, I know the detectives want to talk to me. Why, if he had done nothing? And remember, the detectives were completely unaware of this little home video at the time when he said that, they didn't know it existed. Detective Chisholm didn't know it existed when he spoke with Erick Donaldson. Why would Erick Donaldson know the police were looking for him to talk about the murder of Benny Zeigler, because he was there. And what does he testify to when he comes in and he talks to Detective Chisholm, I'll tell you everything you want to know if you let me talk to my girlfriend. That's a lie."

The prosecutorial mischief of accusing the defendant of being a liar is well summarized in *State v. Pabst*, 268 Kan. 501, 506-12, 996 P.2d 321 (2000), where referring to the defendant as a liar 11 times during closing argument was deemed to be so offensive to the prosecutorial obligation that a guilty verdict was reversed and a new trial was ordered. We need not repeat Justice Six's often-cited opinion, which clearly says: "When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury." 268 Kan. at 507.

The first two comments quoted above pass muster as permissible statements, but the second two move into the area of impropriety. Whether they require reversal is, however, another matter.

There are finally two additional comments which Donaldson points to in contending the offensive statements in the prosecutor's closing require reversal. In addition to arguing a defendant is lying, it is also improper for a prosecutor to attempt to bolster the credibility of the State's witnesses. See *State v. Mosley*, 25 Kan. App. 2d 519, 525, 965 P.2d 848, *rev. denied* 266 Kan. 1113 (1998). In this case, the prosecutor, in closing statement, said:

"Why can't you believe Detective Chisholm when he swore an oath? Do you need a videotape of what happened? Do you really need a videotape when you have to compare it with what Erick Donaldson had to tell you with the things he wants to make you believe, wants to make you ignore and avoid an awful lot of stuff? . . .

"The fact of the matter is, is that the only person with the incentive to tell you something that is not true is Erick Donaldson. Does Detective Chisholm get some brownie points, does he get additional salary? What does he get for coming in here and making something up, other than possibly ruining his career, and the two other individuals that are already tried and convicted. So, no, Detective Chisholm is simply telling you what happened."

This statement improperly bolsters the credibility of Detective Chisholm, and the jury is told by the prosecutor the result of previous trials, which is totally improper.

Finally, in considering the cocaine sale where Donaldson was arrested, the prosecutor made a sarcastic remark about the defendant, and we must consider whether it shows ill will. The prosecutor said:

"Mr. Donaldson made the mistake of selling it to police officers and, you know, wants you to believe—really he wants you to believe that this guy he doesn't know the name of, is using his girlfriend's phone to set up a drug deal, then giving it back to him. And then the guy says to go to this location, *he doesn't know why, little Erick doesn't know why, can't figure it out*, but we're just going to go down to the Eco Water place and go to some parking lot to meet some guy. And he's getting instructions from some guy he doesn't know, driving some car he doesn't know who it belongs to." (Emphasis added.)

We recognize the stress and combative nature of trials, but the obligations placed on prosecutors are clear. Practically all of the statements objected to on appeal are fair comment on the evidence. But, calling the defendant a liar and vouching for the credibility of State's witnesses are outside the wide latitude allowed to prosecutors in closing arguments. As such, we must proceed to the second step in the analysis: whether the prosecutor's statements constitute plain error and denied Donaldson a fair trial.

The three factors we must consider in the second step of the analysis are: (1) Is the conduct gross and flagrant, (2) does the conduct show ill will on the prosecutor's part, and (3) is the evidence against the defendant of such a direct and overwhelming

nature that the misconduct would likely have little weight in the minds of the jurors? *Tosh*, 278 Kan. 83, Syl. ¶ 2.

Our situation is similar to one this court considered in *State v. Douglas*, 274 Kan. 96, 49 P.3d 446 (2002), *cert. denied* 537 U.S. 1198 (2003), where the prosecutor suggested: " '[I]f you believe every word that came out of Mr. Douglas' mouth, then you're pretty naive, because what he said doesn't make much sense.' " 274 Kan. at 106. The prosecutor in five different sentences referred to Mr. Douglas' testimony as being "unbelievable."

The *Douglas* court determined that the prosecutor's comments were outside the wide latitude allowed in closing argument but concluded they were not so gross and flagrant as to prejudice the jury against the defendant and deny his right to a fair trial. The court in *Douglas* said: "The prosecutor's characterization of Douglas' version of the facts as 'unbelievable' did not rise to the level of the conduct in *Pabst*." 274 Kan. at 108.

Our facts are more analogous to *Douglas* than *Pabst*. Several, certainly not all, of the prosecutor's arguments were improper, but they do not appear to be so gross and flagrant as to deny Donaldson a fair trial.

When we look to the ill will factor, we must consider the "little Erick" statement. Being spontaneous and "folksy" in argument may be thought to be persuasive and the cold record does not always reflect the courtroom dynamics, but a prosecutor must always be mindful of his or her duty under our codes of conduct. Making an argument based on height, weight, or other physical characteristic is not proper, but it was isolated and does not show sufficient ill will to require reversal.

Finally, the third factor is whether the evidence against the defendant was of such a direct and overwhelming nature that the misconduct would likely have little effect in the minds of the jurors. Answering this question requires the application of the dual standard applied in *State v. Donesay*, 265 Kan. 60, 85-89, 959 P.2d 862 (1998), which requires the court to evaluate whether the comments affected the defendant's substantial rights and whether the error had little, if any, likelihood of changing the result of the trial. See *Tosh*, 278 Kan. at 96-97.

In this case, the comments had little, if any, likelihood of changing the result of the trial. The evidence of Donaldson's direct participation in both crimes was strong. Donaldson's confession to Detective Chisholm was corroborated by the testimony of both Brown and Jessica Cruz, an unwilling witness. Cruz testified that Donaldson was with Jackson immediately before Zeigler's murder and that she made them take her home because she did not want to be involved in what they were going to do. The testimony concerning the drug sale was uncontroverted and easily satisfied all the statutory elements of the crime.

The comments we review as inappropriate were not so gross and flagrant so as to prejudice the defendant. The comment relating to size of the defendant was improper but does not show ill will requiring reversal. The evidence was strong, and while we are mindful of the admonition of *Tosh* that "[d]enial of a fair trial violates the due process rights of the guilty defendant just as surely as those of the innocent one," 278 Kan. at 97, we hold the comments complained of on appeal would likely have had little weight in the minds of the jurors. The jury was properly instructed as to the weight to be given to arguments. Reversible error is not shown here.

### Amendment of Complaint

At the hearing on its motion to consolidate prior to trial, the State orally moved to amend the information against Donaldson to include an alternative count of felony murder based on aggravated robbery or attempted aggravated robbery in addition to the previously charged count of felony murder based on felony theft.

Donaldson objected and requested another preliminary hearing on the amended charges. The trial court found no prejudice, granted the amendment, and denied the request for a new preliminary hearing. As has been previously stated herein, Donaldson was found guilty of both alternative counts at his trial.

K.S.A. 2004 Supp. 22-3201(e) states: "The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." Prejudice is

the determining factor, and the issue is determined by an abuse of discretion standard of review. *State v. Woods*, 250 Kan. 109, Syl. ¶ 1, 825 P.2d 514 (1992).

Donaldson's prejudice argument overlooks his defense of denial. He testified at trial he was at Brown's house when Zeigler was murdered and was not involved. This same defense applies to either of the alternative underlying felonies to support felony murder.

In addition, the evidence at the preliminary hearing supported a probable cause finding for felony murder based on aggravated robbery as well as felony theft. The facts justifying both alternatives have been stated several times previously.

A similar argument was made to this court in *State v. Smith*, 225 Kan. 796, 594 P.2d 218 (1979), and we held no prejudice was shown; the same defense was presented to either alternative charge, and no error was shown. We make the same ruling in our case. It was not an abuse of discretion to allow the amendment.

### Admission of Confession

Donaldson contends the trial court erroneously admitted what amounts to a confession in his statements to Detective Chisholm. He says his confession was involuntary because he was influenced by prescription headache medicine, alcohol, and sleep deprivation.

Our determination on the issue of voluntariness of a confession involves a legal question requiring independent appellate review. In reviewing a trial court's ruling on a motion to suppress a confession, the appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard; the appellate court reviews the ultimate legal decision drawn from those facts de novo. *State v. Makthepharak*, 276 Kan. 563, 566-67, 78 P.3d 412 (2003).

"To determine whether a defendant's confession is voluntary, a court looks at the totality of the circumstances. The prosecution bears the burden of proving that a confession is admissible by a preponderance of the evidence. Factors include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry is whether the statement was the product of the free and inde-

pendent will of the accused. [Citation omitted.]" *State v. White*, 275 Kan. 580, 597, 67 P.3d 138 (2003).

The trial court found that although Donaldson appeared to be tired, he was not under the influence of alcohol or drugs. The trial judge specifically noted he gave no credit to Donaldson's testimony at the hearing on the motion to suppress and concluded the confession was voluntary.

The trial court's findings and conclusions are supported by the record. Detective Chisholm testified Donaldson at all times responded appropriately and did not appear to be under the influence of alcohol or drugs. Detective Chisholm testified Donaldson had stated he was not drunk or high during the interrogation. Donaldson testified at the suppression hearing that he had consumed seven or eight 16-ounce beers within 30 to 45 minutes prior to driving to the parking lot where he was arrested. The trial court did not give any credence to this testimony.

Detective Chisholm testified that Donaldson was yawning, but he did not ask to sleep nor appear to sleep during the interrogation. Detective Chisholm said Donaldson never requested an attorney before being taken to jail, while in contrast Donaldson said he asked for an attorney numerous times after being told his first story was not believed and he was asked to tell the truth.

We do not reweigh the evidence or pass on the credibility of witnesses, and we accept the trial court's determination that Donaldson's testimony deserved no weight. All of the trial court's findings are supported by substantial competent evidence.

In looking at the totality of the circumstances as required by *White*, 275 Kan. 580, our key inquiry is whether the statement is a product of the accused's free and independent will. See *State v. Harris*, 279 Kan. 163, 167, 105 P.3d 1258 (2005).

Donaldson's argument is focused on the duration and manner of the interrogation; his age, intellect, and background; and his testimony that he was tired, drunk, and under the influence of prescription medication. Donaldson's confession was clearly voluntary based on his ability to communicate with the outside world and the fairness of the officers in conducting the investigation.

The record and testimony show Donaldson was placed in. an interview room at approximately 11 p.m. Detective Chisholm arrived to interview him at approximately 11:30 p.m. Donaldson asked to see his girlfriend, so Detective Chisholm arranged to have her come to the police station so she could talk to Donaldson. While waiting for Donaldson's girlfriend, Detective Chisholm asked Donaldson some personal history questions and completed a personal history form. When Donaldson's girlfriend arrived, Detective Chisholm allowed her to talk to Donaldson for about 17 minutes. Detective Chisholm advised Donaldson of his *Miranda* rights at approximately 1 a.m. and then interviewed him sporadically until about 3:55 a.m. During the approximately 5-hour interview, Donaldson was allowed to have several cigarettes, a hamburger, a drink, and bathroom breaks.

The record showed Donaldson was 27 years old and that he had substantial experience with the judicial system.

In *Harris*, this court upheld a statement given to Detective Chisholm under very similar circumstances. Harris, Jackson, and Donaldson were all charged with Zeigler's murder; Harris was held over a nearly 7-hour period, although only interviewed for about 2½ hours of that time. *Harris* supports the conclusion that the duration and manner of Donaldson's interrogation was not coercive. See 279 Kan. at 167-72. Here, the trial court viewed the available videotape of the interview but did not find it helpful. Donaldson has the burden of showing error and error is not shown in this case. See *State v. Navarro*, 272 Kan. 573, 588, 35 P.3d 802 (2001). We have previously stated that great reliance must be placed on the finder of fact in determining whether a confession is voluntary. *State v. Bell*, 276 Kan. 785, Syl. ¶ 8, 80 P.3d 367 (2003).

Viewed in the light of the totality of the circumstances, Donaldson's confession was voluntary. The trial court correctly admitted Donaldson's confession into evidence.

### *Sufficiency of the Evidence to Support the Cocaine Sale Conviction*

Donaldson was permitted to file a supplemental brief in which

he argued the evidence was insufficient to convict him of sale of cocaine.

We have previously set forth the standard of review of insufficiency of evidence arguments in the issue relating to the sufficiency of the evidence to convict of felony murder.

Donaldson argues the evidence showed that no money or drugs changed hands and there was no physical evidence showing that he sold, attempted to sell, or was in possession of cocaine.

The applicable statute under which Donaldson was charged is K.S.A. 2004 Supp. 65-4161(a), which reads as follows:

"Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute; or dispense any opiates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107 and amendments thereto. Except as provided in subsections (b), (c) and (d), any person who violates this subsection shall be guilty of a drug severity level 3 felony."

The jury instructions, which were not objected to, stated that to establish the charge of unlawfully selling cocaine, it must be proved that "the defendant sold cocaine" and he "did so intentionally." Instruction No. 12, the "sale" instruction, stated:

"A sale under the Uniform Controlled Substances Act has a broader meaning than 'sale' usually has. Sale under the Act means selling for money, and also includes barter, exchange, or gift, or an offer to do any of these things. It is not necessary that the prohibited substance be the property of the defendant or in his or her physical possession."

This instruction is consistent with what was said in *State v. Griffin*, 221 Kan. 83, 84, 558 P.2d 90 (1976):

"A 'sale' of drugs is given a much wider meaning than a 'sale' in the context of commercial law. Questions of the possession and passing of legal title, the existence of consideration, and who possessed the drugs sold are not regarded. A drug 'sale' encompasses such transactions as barter, exchange or gift, or offer therefor. [Citations omitted.]"

We further said: "Under this broad definition of sale, each such transaction need not necessarily include an actual, constructive or attempted transfer of a controlled substance." 221 Kan. at 85.

There was a plethora of testimony that showed an offer of sale and an actual attempt to transfer possession of the cocaine. Officer Kochenderfer testified that he saw Donaldson drop something on the ground through the window. Donaldson immediately began stomping his foot on the ground when he exited the vehicle. The police recovered a rock of cocaine from the ground where Donaldson was stomping. Although Officer Kochenderfer sensed danger and told the CI to run before the cocaine was in the CI's possession, the transfer of the drugs to the CI was not necessary to finalize the sale under the elements of K.S.A. 2004 Supp. 65-4161(a). Likewise, it is not significant under the elements of the statute that the CI had the $100 in his possession after Donaldson was arrested.

The negotiations were for "a hundred" and Officer Padron learned the cocaine was in rock form. There was an agreement for a sale. When they met, Donaldson first told the CI they needed to go elsewhere, then said, "let's just get it done with."

Under the facts of this case, the instructions, and our scope of review, viewing evidence in the light most favorable to the prosecution, the jury clearly could have found Donaldson guilty beyond a reasonable doubt of sale and/or possession of cocaine with intent to sell.

### Cumulative Error

Donaldson makes a cumulative error analysis and argument which is simply without merit. There were no errors except for several improper comments in the prosecutor's closing argument, and they are not sufficient to require reversal. The claim of cumulative error has no merit.

Affirmed.

GERNON, J., not participating.

LARSON, S.J., assigned.

BEIER, J., concurring in part and dissenting in part. I concur with the majority of the court in nearly all respects. I respectfully dissent only on the joinder issue, because I believe that the felony murder and cocaine sale charges were improperly tried together. The two crimes were not, as the State asserts, "connected together" under the governing statute. See K.S.A. 22-3202(1). Their consolidation for trial does not resemble any of the three scenarios we have accepted in the past, as outlined in Justice Larson's opinion. Rather, the defendant is correct that the authorities' *investigations* of the crimes were connected together, but not the crimes themselves. Even under a forgiving abuse of discretion standard, the trial of the two crimes together was error.

The question then becomes whether this error resulted in prejudice or harm to the defense. Although I am persuaded that the consolidation of the cocaine sale charge with the felony-murder charge was harmless, I am not persuaded that the consolidation of the felony-murder charge with the cocaine sale charge was likewise harmless. I would reverse defendant's cocaine sale conviction and remand that portion of the case, requiring the State to retry that charge on its own, if at all.

ALLEGRUCCI, J., joins in the foregoing concurrence and dissent.