NOT DESIGNATED FOR PUBLICATION

No. 117,099

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN W. NEIGHBORS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed March 16, 2018. Reversed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Darrell L. Smith*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and SCHROEDER, JJ.

SCHROEDER, J.:  Justin W. Neighbors appeals his jury conviction for distribution of methamphetamine. On appeal, Neighbors raises four issues:  prosecutorial error; the lack of a limiting instruction; the assessment of a $400 KBI lab fee; and failure of the district court to sua sponte raise his inability to pay the fee. Because we are convinced the prosecutor committed reversible error when he vouched for credibility of the prosecution witnesses and when he misstated the facts about the officers actually watching the sale, we need not address his other issues on appeal. Reversed, sentence vacated, and remanded for a new trial.

1

FACTS

The State charged Neighbors with one count each of distribution of methamphetamine, possession of drug paraphernalia, and possession of methamphetamine.

At trial, Officer Dominick Vortherms testified he was conducting surveillance near Neighbors' residence on May 22, 2015, because there were several reports of drug dealing in the area. He was not conducting surveillance of Neighbors' residence. A pickup driving past him with two men in it and stopping at Neighbors' residence caught Officer Vortherms' attention. A woman Officer Vortherms knew from previous law enforcement contact approached the passenger, Kenny Schlesener, and Schlesener walked into Neighbors' residence with the woman. He was in Neighbors' residence for approximately 10 minutes. During that time, Officer Vortherms notified Detective Kelly Davis and Deputy Heath Samuels that he believed suspicious activity was occurring. Officer Vortherms testified he observed Schlesener and Neighbors exit the residence. Schlesener placed what appeared to be a red cooler—but was ultimately a drill bag—in the bed of the pickup while Neighbors spoke with the driver, John Potter. Schlesener and Potter left three to five minutes after Schlesener and Neighbors exited the residence.

Deputy Samuels testified he stopped Potter and Schlesener's vehicle. He indicated Schlesener told him they stopped at Neighbors' house because Potter owed him money. Schlesener also told Deputy Samuels he saw the law enforcement in the area and "knew that it looked bad because he knew the friend's history and drugs when he was talking about Mr. Neighbors has a history of drugs, I guess." Defense counsel objected and the district court instructed the jury to disregard Deputy Samuels' last answer.

Deputy Samuels testified he searched the red bag. Inside a toolbox in the red bag, Deputy Samuels discovered a glass pipe, syringes, and a digital scale. The glass pipe

2

tested positive for methamphetamine. In addition, Deputy Samuels located methamphetamine on Potter. Deputy Samuels testified Potter told him Schlesener gave Potter the methamphetamine when they got pulled over. Deputy Samuels took Potter and Schlesener to jail. He then made contact with Neighbors. Deputy Samuels testified Neighbors admitted to selling $50 worth of methamphetamine to Potter and Schlesener and confirmed he was distributing methamphetamine. Though Neighbors agreed to cooperate, they were unsuccessful in setting up a controlled buy. Deputy Samuels did not record his conversation with Neighbors.

Detective Davis testified he assisted Deputy Samuels after Deputy Samuels stopped the pickup. Detective Davis also indicated he was present during Neighbors' interview at the police department in which Neighbors told him he had picked up all the drug paraphernalia and drugs he could find, put it into a bag, and gave it to Potter and Schlesener. Detective Davis testified Neighbors confirmed he sold methamphetamine. He indicated there was no audio or video of Neighbors' confession. Detective Davis also told the jury Neighbors wanted to cooperate and purchase narcotics for the officers, however, the usual practice was not to record information from cooperating witnesses.

Potter testified he did not have the methamphetamine Deputy Samuels found on him prior to arriving at Neighbors' residence. He testified he believed they were going to Neighbors' house to pick up a drill and he did not suspect the drill bag had drugs in it though he suspected Schlesener had drugs on him.

Finally, Schlesener testified he had methamphetamine when he went into Neighbors' house. He indicated he did not purchase methamphetamine. Schlesener also acknowledged the drill bag and everything inside it was his.

The jury convicted Neighbors of distribution of methamphetamine and possession of methamphetamine. It acquitted Neighbors of possession of drug paraphernalia. The

3

district court sentenced Neighbors to 49 months' imprisonment for distribution of methamphetamine and vacated Neighbors' conviction for possession of methamphetamine.

ANALYSIS

*The prosecutor erred.*

Neighbors' first issue on appeal claims the prosecutor committed reversible error during his closing argument. Our review of the prosecutor's closing argument is now controlled by the *Sherman* standard. It requires this court to use a two-step process to evaluate Neighbors' claim:

"These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

The extent of any ameliorating effect of a jury admonition attempting to remedy a prosecutor's error must be considered in determining whether the erroneous conduct prejudiced the jury and denied the defendant a fair trial. *State v. Barber*, 302 Kan. 367, 383, 353 P.3d 1108 (2015).

Neighbors contends the prosecutor erred in three ways. First, he asserts the prosecutor improperly vouched for the credibility of witnesses. He also argues the prosecutor misstated the law by saying he was compelled to call the witnesses. Finally, Neighbors contends the prosecutor misstated the facts by telling the jury Deputy Samuels and Detective Davis watched the drug sale and that Neighbors admitted to selling drugs that day to both Potter and Schlesener. We will address each in turn.

*Vouching*

Prosecutors may not offer juries their personal opinions regarding the credibility of witnesses. However, prosecutors have wide latitude to craft arguments that include reasonable inferences to be drawn from the evidence, including explaining to juries what they should look for in assessing witness credibility. This is especially true when the defense attacks the credibility of the State's witnesses. *State v. Sean*, 306 Kan. 963, 979, 399 P.3d 168 (2017). Furthermore, "[w]hen a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury." *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000).

In addition, "'a prosecutor's improper comment or argument can be prejudicial, even if the [error] was extemporaneous and made under the stress of rebutting arguments made by defense counsel.' [Citation omitted.]" *State v. Roeder*, 300 Kan. 901, 934, 336 P.3d 831 (2014) (disavowing language in previous cases that defense provocation can justify prosecutorial misconduct), *cert. denied*, 135 S. Ct. 2316 (2015); see *State v.*

*Sprague*, 303 Kan. 418, 429, 362 P.3d 828 (2015) (When responding to defense arguments, the "'open-the-door rule does not insulate a prosecutor from a finding of misconduct.' [Citation omitted.]").

During closing argument, Neighbors' counsel told the jury:

"I'm not attempting to debride [*sic*] the character or integrity of these law enforcement officers, but we should expect more. These officers are provided with all of the technology that we need for the State to have had a super slam dunk of a case. We could have watched Mr. Neighbors allegedly—if what the State says is true, you know, we could have watched him on video from the police interview room admitting to everything that he did, but we don't have that. Deputy Samuels could have turned on his recording equipment, but he didn't, and so, we don't have audio either."

During rebuttal, the prosecutor responded:

"This alleged stuff about the statement is essentially impugning two officers of over 20 years of experience. *It's preposterous to think, and I hope you will agree, that it's preposterous to think* that they would come in here and make something like that up and testify about it under oath on a sale of .67 grams.

"They gave you—in particular, Deputy Samuels and Detective Davis, told you a lot of these cases they have reasons for not recording those things, either in writing or in video or audio. That being said, it is simply—nobody's making captain over a .67 gram case. *It's preposterous to even use the term 'allegedly confessed.'* That's what happened. And what happened here is, *they watched the drug sale*, they stopped 'em, they found the drugs, and Mr. Neighbors admitted that he sold these two gentlemen drugs." (Emphasis added.)

Neighbors contends the prosecutor's comments were similar to the prosecutor's comments in *State v. Ramey*, 50 Kan. App. 2d 82, 92-93, 322 P.3d 404 (2014), and *State v. Norwood*, No. 109,419, 2014 WL 6909514 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1018 (2015). In *Ramey*, the prosecutor asked the jury:

"'I mean, seriously, do you think she lied to the police? Do you think she made this up? Do you think she fabricated some story so she could get $14 back? *Come on, that's insulting.*'" (Emphasis added.) 50 Kan. App. 2d at 92.

The panel found "the prosecutor's comment that he found defense counsel's questioning of whether [the witness] would lie about $14 to be insulting was improper personal comment on the prosecutor's part." The prosecutor improperly vouched for the witness' credibility with his personal opinion that the defense's theory was insulting. 50 Kan. App. 2d at 93. Similarly, in *Norwood*, the prosecutor told the jury: "If you recall, Mr. Norwood did discuss a tale where the eleven year old woke him up, sucking on his breast, or something to that extent. He did testify to that, claim that happened. *It's ridiculous.*" (Emphasis added.) 2014 WL 6909514, at *11. The panel determined "the phrase '[i]t's ridiculous' is an impermissible personal opinion from the prosecutor on the credibility of this testimony." 2014 WL 6909514, at *11.

The State argues *Ramey* and *Norwood* are inapplicable because they predate *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). Additionally, the State contends *Ramey* is distinguishable because Ramey made multiple claims of prosecutorial misconduct. The State's arguments are unpersuasive. *Sherman* did not change the first prong of the prosecutorial error test: "[W]hether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. Further, though Ramey raised multiple complaints of prosecutorial error, the panel specifically found the prosecutor's "that's insulting" comment was impermissible opinion. Similarly, the *Norwood* panel specifically found the prosecutor's "[i]t's ridiculous" comment was impermissible personal opinion.

Although the Norwood panel did not reverse because of the prosecutor's impermissible personal opinion based on a finding the prosecutor showed no ill will

7

when the prosecutor said "it's ridiculous" only once. Here, the prosecutor used the term preposterous three times. Moreover, under *Sherman*, a prosecutor's ill will is no longer considered as part of the prosecutorial error framework. 305 Kan. at 107 (overruling *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 [2004]).

In this case, defense counsel referred to Neighbors' alleged confession, pointing out no additional evidence supported the law enforcement officers' testimony. During rebuttal, the prosecutor told the jury:  "*It's preposterous to think, and I hope you will agree, that it's preposterous to think* that they would come in here and make something like that up and testify about it under oath on a sale of .67 grams." (Emphasis added.) He also told the jury, "It's *preposterous* to even use the term 'allegedly confessed.' That's what happened." (Emphasis added.) Whether the term used by the prosecutor is ridiculous, insulting, or preposterous, they are all adjectives used to attack credibility. Here, like the prosecutors in *Ramey* and *Norwood*, the prosecutor improperly offered his personal opinion on the credibility of the witnesses by saying the use of the term "allegedly" was preposterous. As such, the prosecutor committed error.

*Misstating the Law*

During closing argument, the prosecutor told the jury:

"[A]nd before I go too much further, I want to tell you, too, that when you have certain people testifying in these cases, like drug cases, I think you've all gathered that I don't call down to central casting and get my witnesses. *Mr. Potter and Mr. Schlesener are witnesses to this that the State's compelled to call*, but, ladies and gentlemen, I think that any variance in what they said compared with what they said out there and the overall facts, you can easily resolve those to see what's actually going on here and that is what is confirmed by the confession by the defendant." (Emphasis added.)

8

Neighbors argues the prosecutor misstated the law during his closing argument because the State was not "compelled" to call Potter and Schlesener. The State contends: "Arguing that the State is 'compelled' to call witnesses was not a contention that their testimony was legally required under the plain meaning of the word compelled." A misstatement of controlling law must be reviewed on appeal, regardless of a timely objection at trial, to protect a defendant's right to due process. When a misstatement of controlling law is made deliberately, it is outside the considerable latitude given to prosecutors during their arguments. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006).

Webster's New World College Dictionary 304 (5th ed. 2014) defines "compel" as "to force or constrain, as to do something" or "to get or bring about by force." The State was not forced to call Potter or Schlesener as witnesses; it could have chosen not to call them as witnesses and relied on the testimony of the officers. Technically, the prosecutor misstated the law. However, from the context, we are convinced the prosecutor merely meant the State did not get to pick who witnessed the crimes at issue. As such, the prosecutor did not commit error.

*Arguing Facts Not In Evidence*

Finally, Neighbors contends the prosecutor erred when he argued facts not in evidence. Though a prosecutor is granted wide latitude in discussing the evidence, prosecutors must confine their comments during closing arguments to the evidence and reasonable inferences drawn from the evidence. *State v. Richmond*, 289 Kan. 419, 440-41, 212 P.3d 165 (2009). Neighbors takes issue with three statements. During closing arguments, the prosecutor told the jury:  "Officer Vortherms is set up surveilling a house where they know that or suspect that drug distribution or sales are taking place." In addition, the prosecutor told the jury Deputy Samuels and Detective Davis "watched the drug sale," and "Neighbors admitted that he sold these two gentlemen drugs."

9

The record reflects Officer Vortherms specifically testified he was not surveilling Neighbors' house. However, Officer Vortherms testified he was surveilling a house in the area due to several reports of drug dealing when a truck drove by and caught his attention. The truck pulled into Neighbors' driveway; a woman approached the vehicle's passenger, Schlesener; and the woman and Schelsener entered Neighbors' house together. Officer Vortherms also testified Schelsener was inside the house approximately 10 minutes and Officer Vortherms notified Deputy Samuels and Detective Davis he thought the activity was suspicious. While Neighbors' house was not the initial target of the surveillance, Officer Vortherms obviously watched the house after Potter and Schlesener arrived.

On rebuttal, the prosecutor told the jury:

"Deputy Samuels and Detective Davis, told you a lot of these cases they have reasons for not recording [confessions], either in writing or in video or audio. That being said, it is simply— nobody's making captain over a .67 gram case. It's preposterous to even use the term 'allegedly confessed.' That's what happened. And what happened here is, *they watched the drug sale*, they stopped 'em, they found the drugs, and Mr. Neighbors admitted that he sold these two gentlemen drugs."

The clear and common meaning of the prosecutor's statement that law enforcement personnel "watched the drug sale" means that they actually observed the transaction taking place between two or more persons, not speculation about what might have occurred inside the house. Deputy Samuels and Detective Davis did not watch a drug sale. Only Officer Vortherms saw Potter and Schlesener's vehicle arrive at Neighbors' house and depart approximately 10 minutes later. Neighbors correctly points out no one testified they saw a transaction of any kind. Officer Vortherms came closest to testifying regarding a transaction, merely indicating he believed the activity was suspicious. Neither Deputy Samuels nor Detective Davis observed a drug sale and the prosecutor misstated the evidence when he indicated they did.

10

In contrast, Deputy Samuels testified Neighbors admitted to selling Potter $50 worth of methamphetamine. However, the prosecutor also asked Deputy Samuels if Neighbors ever denied selling the methamphetamine to Potter and Schlesener and he indicated Neighbors did not deny selling methamphetamine to them. While the prosecutor misstated the evidence when he said Deputy Samuels and Detective Davis observed the drug sale, the prosecutor did not misstate the evidence when he told the jury Neighbors admitted to selling methamphetamines to Potter and Schlesener.

*Harmlessness*

The record reflects the prosecutor committed two errors during closing argument. First, he improperly provided his personal opinion during his rebuttal argument as to defense counsel's statements as being preposterous at least three times. Second, the prosecutor misstated the evidence when he told the jury Deputy Samuels and Detective Davis watched the drug sale.

Before determining these errors require reversal, this court must determine whether the error prejudiced the defendant's due process rights to a fair trial. Even if the prosecutor's actions are egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmless test. *Sherman*, 305 Kan. at 114.

> "In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801, (2011), *cert. denied* 565 U.S. 1221 (2012)." *Sherman*, 305 Kan. at 109.

The State argues the closing arguments did not inflame the jury. It also argues the fact the jury acquitted Neighbors of possession of drug paraphernalia shows any error

11

was harmless. However, we find the State's arguments are not persuasive, and the State has failed to show the prosecutorial error was harmless.

First, the fact the jury acquitted Neighbors of possession of drug paraphernalia has no bearing on whether he distributed methamphetamine. Furthermore, neither Potter nor Schlesener testified Neighbors sold either of them methamphetamine. In addition, though Detective Davis and Deputy Samuels explained why Neighbors' confession was not recorded in some way—it is their usual practice to not record information from individuals cooperating with law enforcement—no evidence corroborated their testimony regarding Neighbors' confession. As such, this case hinged almost entirely on the credibility of Detective Davis and Deputy Samuels. When the prosecutor told the jury "it's *preposterous* to think that they would come in here and make something like that up and testify about it under oath on a sale of .67 grams," and that it was "*preposterous* to even use the term 'allegedly confessed,'" he improperly bolstered the credibility of Detective Davis and Deputy Samuels. Had the prosecutor not bolstered the officers' credibility, the jury could have determined there was insufficient evidence to show, beyond a reasonable doubt, Neighbors was guilty of distributing methamphetamine.

Similarly, the fact the jury acquitted Neighbors of possession of drug paraphernalia has no bearing on whether the prosecutor prejudiced Neighbors right to a fair trial by commenting on facts not in evidence. In fact, the State does not address whether the misstatement of evidence affected the outcome of the trial in light of the entire record. It seems unlikely such a minor misstatement would have impacted the outcome of the trial. However, the State has the burden to demonstrate beyond a reasonable doubt the prosecutorial error did not affect the outcome of the trial. It has not met this burden.

We find the two points of prosecutorial error sufficient to undermine our confidence in the outcome of the trail. We reverse and remand for a new trial. Because

12

we reverse and vacate Neighbors' sentence, we need not address the other issues he raises on appeal.

Reversed and remanded for a new trial.

\*\*\*

BUSER, J., dissenting:  I dissent from my colleagues' judgment that the prosecutor's brief comments in closing argument violated Neighbors' constitutional due process rights to a fair trial and were, therefore, reversible error.

OVERVIEW

At the outset, the majority's claim of reversible error is undercut by the simple fact that defense counsel at trial did not even object to the comments, let alone move for a mistrial, due to the claimed reversible nature of either or both of the prosecutor's remarks. See K.S.A. 22-3423(1)(b) (The trial court may terminate the trial and order a mistrial if there is a "legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.").

The defendant's failure to interpose a contemporaneous objection at trial is one factor an appellate court may consider in the evaluation of whether prosecutorial error occurred during closing argument and, if so, its potential for prejudice. As our Supreme Court has stated that "the absence of an objection may figure into the court's analysis of the alleged [prosecutorial error]. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009)." *State v. Breedlove*, 295 Kan. 481, 496, 286 P.3d 1123 (2012).

Moreover, as former Chief Justice McFarland observed:

13

"The fact that the prosecutor's statements prompted neither an objection by counsel nor interruption by the judge also indicates that they were not glaring misstatements or conspicuously offensive (though I recognize that the lack of either does not remove the misconduct from our review). See *People v. Rodriguez*, 794 P.2d 965, 972 (Colo.1990) (recognizing lack of objection is factor to consider in examining prosecutorial misconduct, as lack of objection may demonstrate defense counsel's belief that argument was not overly damaging)." *State v. Bunyard*, 281 Kan. 392, 419, 133 P.3d 14 (2006) (McFarland, C.J., dissenting in part), *overruled in part on other grounds by State v. Flynn*, 299 Kan. 1052, 329 P.3d 429 (2014).

See also *State v. Donaldson*, 279 Kan. 694, 705, 112 P.3d 99 (2005) ("There was no objection made at trial to the now complained-of comments. This historically meant there is no basis for finding reversible error.").

It is curious that Neighbors' realization of the purportedly egregious nature of the closing arguments did not occur during trial (when they could have been promptly remedied, if necessary, by the trial court) but only surfaced for the first time on appeal after his conviction. Neighbors' failure to contemporaneously object to either of the prosecutor's claimed improper closing comments indicates that the remarks were not so offensive or blatantly improper that they violated Neighbors' due process rights to a fair trial.

ARGUING FACTS NOT IN EVIDENCE

My colleagues conclude that the prosecutor's five word statement, "they watched the drug sale," was improper argument about facts not in evidence because "[t]he clear and common meaning of the prosecutor's statement that law enforcement personnel 'watched the drug sale' means that they actually observed the transaction taking place between two or more persons, not speculation about what might have occurred inside the [residence]." Slip op. at 10. I do not find any error in the prosecutor's characterization. It

14

was a fair inference given all of the State's evidence and the prosecution's theory of the case.

First, it is important to consider the prosecutor's five words in context. Appellate courts typically read challenged remarks by a prosecutor in their full context because "reading [such] comments in isolation can frequently be misleading as to the message that the prosecutor was conveying to the jury." *State v. Naputi*, 293 Kan. 55, 59, 260 P.3d 86 (2011); see *State v. Davis*, 306 Kan. 400, 413, 394 P.3d 817 (2017).

In the present case, important context includes the fact that at the time the prosecutor's comment was made, he was summing up the State's case and concluding his final remarks. Moreover, the challenged five words were immediately followed by a more expansive factual recitation:

> "And what happened here is, *they watched the drug sale*, they stopped 'em, they found the drugs, and Mr. Neighbors admitted that he sold these two gentlemen drugs.
> 
> ". . . But at the end of the day . . . what you've got is, people going there, picking something up, seen picking it up, leaving. Guess what's in it; drugs, drug paraphernalia. Guess what's on Mr. Potter; drugs. Guess who says that he sold it to them. . . . This is a case where they observed the behavior that they were set up there to watch, a drug sale, stop the car or truck with the drugs in it, and got the information and Mr. Neighbors confirmed exactly what they knew." (Emphasis added.)

The State's theory of the case was that Officer Dominick Vortherms watched as Potter parked his truck at Neighbors' residence. Kenny Schlesener, accompanied by a woman known to Officer Vortherms, went briefly inside. Shortly thereafter, Schlessener left the residence accompanied by Neighbors who walked up to the driver's side of the vehicle and was seen interacting with Potter who was seated on the driver's side of the truck. At this time, Schlesener, carrying a red bag from Neighbor's residence, got back inside the truck and the two men left. Shortly thereafter, Potter's truck was stopped by

15

Deputy Heath Samuels, and a small quantity of methamphetamine was found on Potter. A search of the bag revealed drug paraphernalia—pipes used to smoke methamphetamine, syringes, a spoon and cotton, digital scales, a bong with traces of methamphetamine, and a small quantity of marijuana. Armed with this incriminating information, as Neighbors drove from his residence, he was stopped and questioned by Deputy Samuels and later interviewed at the police station by Detective Kelly Davis. At both the vehicle stop and at the police station, Neighbors confessed to selling the methamphetamine found on Potter. In short, from start to finish, the surveilling law enforcement officers had, in fact, watched a drug sale.

Moreover, the prosecutor's words, "they watched the drug sale," mirrored the prosecutor's brief opening statement given to the jury a few hours earlier:

> "[T]his case is going to be one where we're going to present, at most, five witnesses.
> "The first one is going to be Officer Vortherms, who's going to tell you that he was set up on surveillance on the 22nd of May last year. Tell you what he saw and tell you essentially that *what he saw was what he believed to be a drug transaction take place*." (Emphasis added.)

Not only were the prosecutor's five words consistent with what the prosecutor informed the jury would be his evidence at trial, there was sworn testimony to support the prosecutor's argument. At trial, Deputy Samuels, a member of the Narcotics Task Force, testified that while he and Officer Vortherms were conducting drug interdiction surveillance, Officer Vortherms "called me and advised that he had a green truck pull up into the residence and observed the occupants of the truck go into the apartment and he believed that *they were performing some kind of a drug trafficking deal*." (Emphasis added.) Deputy Samuels' testimony alone validated the prosecutor's five words.

Additionally, the majority mistakenly assumes that the drug transaction necessarily occurred inside Neighbors' residence. In fact, as just noted, there was

16

eyewitness testimony from Officer Vortherms that he briefly observed Potter sitting in his truck interacting with Neighbors as the defendant stood outside the driver's side window. While the prosecutor did not assert the exact manner in which the drug sale occurred, the totality of the direct and circumstantial evidence supported the prosecutor's closing argument that—whether the sale occurred inside the residence or immediately thereafter outside the residence when Neighbors briefly interacted with Potter as he sat in his truck—the officers had "watched the drug sale."

Finally, it should also be remembered that promptly following the prosecutor's five words, the jury was informed in jury instruction No. 4 that stated: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. *If any statements are made that are not supported by the evidence, they should be disregarded*." (Emphasis added.)

It strains credulity that any juror serving on a one-day jury trial would listen to the prosecutor's closing five words in the context of the State's opening statement, entire closing argument, and undisputed evidence from the State's law enforcement witnesses, and somehow erroneously conclude that the prosecutor was arguing that the trial evidence showed that a law enforcement officer personally observed a hand-to-hand drug transaction involving Neighbors. The prosecutor's challenged five words, which encapsulated the State's case, were not error, let alone reversible error, because those words represented a very reasonable inference about what the law enforcement officers observed and discovered during their drug investigation.

PERSONALLY VOUCHING FOR THE CREDIBILITY OF WITNESSES

At the outset, I agree with my colleagues that it is "improper for a prosecutor to attempt to bolster the credibility of the State's witnesses." *Donaldson*, 279 Kan. at 708. It is also true that a "prosecutor may not state his or her personal belief as to the reliability

17

or credibility of testimony given at a criminal trial." *State v. Brinklow*, 288 Kan. 39, Syl. ¶ 6, 200 P.3d 1225 (2009). Given this law, I acknowledge that it was error for the prosecutor to argue that it was "preposterous" to think that law enforcement officers would lie about or mistakenly relate the contents of Neighbors' confession, or that it was "preposterous" for defense counsel to use the phrase that Neighbors "'allegedly confessed.'" But do these remarks justify setting aside the jury's verdict?

My colleagues cite only one case, *State v. Ramey*, 50 Kan. App. 2d 82, 92-93, 322 P.3d 404 (2014), wherein our court reversed a conviction based, in part, on a similar prosecutorial error in closing argument. In that case, one of several offending remarks were made in response to defense counsel's attack on the victim's testimony, and the prosecutor attempted to rehabilitate his witness by arguing: "'I mean, seriously, do you think she lied to the police? Do you think she made this up? Do you think she fabricated some story so she could get $14 back? Come on, *that's insulting*.'" (Emphasis added.) 50 Kan. App. 2d at 92.

But the reversal of Ramey's convictions was not due to one improper comment by the prosecutor, On the contrary, the reversal was due to cumulative and serious prosecutorial errors. As our court summarized its holding:

> "[Ramey] argues the prosecutor committed misconduct 23 times and, thus, the misconduct was not isolated by any stretch of the imagination. While we do not count 23 instances of misconduct, we believe the prosecutor committed misconduct in several instances: (1) the allegation of prior crimes of theft or dishonesty; (2) the bizarre nature of Ramey's story and how he allegedly manufactured his defense; (3) the vouching for [the victim's] credibility; (4) the inappropriate question about [the victim's] drinking habits; and (5) the trial causing more pain to [the victim]." 50 Kan. App. 2d at 99.

18

In short, given the multiple and serious prosecutorial errors in *Ramey*, that case provides scant precedent to support a reversal of Neighbors' conviction in this case simply because the prosecutor made a solitary mistake in argumentation.

Three Kansas Supreme Court opinions, however, provide valuable precedent that reversal is not necessarily warranted in cases involving a prosecutor's closing argument similar to the one in this case.

In *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015), the defendant claimed two instances of prosecutorial misconduct occurred during closing arguments. The first occurrence dealt with the prosecutor's ridicule of the defendant's version of how the victim was seriously injured. The prosecutor rhetorically asked, "'Does that make sense? Does the Defendant's story make sense in that regard that he had to defend himself in that fashion? *Preposterous*, ladies and gentlemen.'" 303 Kan. at 428. Our Supreme Court noted: "The State concedes this statement was improper because a 'prosecutor may not state his or her personal belief as to the reliability or credibility of testimony given at a criminal trial.' *State v. Brinklow*, 288 Kan. 39, Syl. ¶ 6, 200 P.3d 1225 (2009)." *Sprague*, 303 Kan. at 428.

Our Supreme Court, however, did not find the "preposterous" reference—the exact same characterization used in this case on appeal—was reversible error because it was a part of the State's argument regarding how the victim was seriously injured. The Supreme Court concluded: "The State's argument—though perhaps not its characterization—was supported by testimony from the State's medical expert. As such, we have no difficulty concluding that there is no reasonable possibility that the improper statements affected the outcome of the trial." 303 Kan. at 430.

The second challenged statement in *Sprague* was made during the State's second closing argument. The prosecutor referenced certain witnesses and remarked, "'you are

19

not asked to judge whether they are good people or bad people, whether you like them or don't like them. *But I submit they don't have any motive in coming in here and testifying.*'" 303 Kan. at 428. Our Supreme Court found that "whether or not the State was improperly bolstering the credibility of its witnesses, the prosecutor was commenting on facts outside of the evidence and was injecting her personal opinion regarding witnesses' motives." 303 Kan. at 429. As in the case of the first improper argument, the Supreme Court did not find this second argument reversible error. 303 Kan. at 430.

In *Sprague*, our Supreme Court cited with approval *Donaldson*. There again, the prosecutor's offending remarks were very akin to the one's made here. As related by our Supreme Court, "In *Donaldson*, the State improperly bolstered the testimony of a detective by stating he received no additional pay for testifying as he did and if he was making testimony up he could ruin his career and two other trials [involving the defendant]." *Sprague*, 303 Kan. at 428. Still, in considering the potential prejudice to the defendant, our Supreme Court concluded in *Donaldson* that the remarks "would likely have had little weight in the minds of the jurors. The jury was properly instructed as to the weight to be given to arguments. Reversible error is not shown here." 279 Kan. at 711.

Finally, in *Sprague*, the Supreme Court contrasted the closing argument in *Donaldson* (which the court found was improper but not reversible) with a closing argument in *State v. McReynolds*, 288 Kan. 318, 325, 202 P.3d 658 (2009), which the Supreme Court held was not even prosecutorial error. *Sprague*, 303 Kan. at 428. The *Sprague* court recounted the closing argument in *McReynolds* which mirrors the kind of argument made in this case:

> "'No police officer benefits from this investigation, no police officers benefit from concocting stories and making [the defendant] agree to those stories. There's only one person in the courtroom right now who benefits from coming into this room,

concocting a story and testifying under oath about that and you know who that person is.'" *Sprague*, 303 Kan. at 428 (quoting *McReynolds*, 288 Kan. at 325).

While the distinction between the prosecutor's erroneous remarks in *Donaldson* and the prosecutor's non-erroneous comments in *McReynolds* is difficult to discern, the important point is that in *Sprague, McReynolds*, *Donaldson*, and the case on appeal, the type and character of the prosecutor's arguments were very similar. And in *Sprague, McReynolds*, and *Donaldson*, our Supreme Court found that none of the closing arguments rose to the level of reversible error.

In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), our Supreme Court clarified how appellate courts should analyze whether prosecutorial error is reversible or harmless:

> "Multiple and varied individualized factors can and likely will affect the *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed.2d 705 (1967)] analysis in future cases. Every instance of prosecutorial error will be fact specific, and any judicial review for prejudice must likewise allow the parties the greatest possible leeway to argue the particulars of each individual case. Courts must simply consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden—*i.e.*, shown that there is no reasonable possibility that the error contributed to the verdict." *Sherman*, 305 Kan. 88, Syl. ¶ 10.

My colleagues emphasize that the prosecutor's "preposterous" and bolstering comments were reversible because

> "though Detective Davis and Deputy Samuels explained why Neighbors' confession was not recorded in some way—it is their usual practice to not record information from individuals cooperating with law enforcement—*no evidence corroborated their testimony regarding Neighbor's confession*. As such, this case hinged almost entirely on the credibility of Detective Davis and Deputy Samuels." (Emphasis added.) Slip op. at 12.

21

I strongly disagree with this assessment.

At the time of trial, Detective Davis had been a police officer for 16 years and a detective with the Emporia Police Department for 7 years. Detective Davis attended the Northeast Counterdrug Training Center and was also a polygraph examiner. The detective testified that while he and another detective sat in an unmarked white Chevrolet Impala, he observed the truck which was driven by Potter with Schlessener as a passenger. Detective Davis was also the primary interviewer of Neighbors' at the police station.

Detective Davis testified that he interviewed Neighbors after Potter and Schlesener were arrested and Neighbors was brought to the police station. Deputy Samuels was present for parts of the interview. According to Detective Davis:

> "[Neighbors] told us that his girlfriend, Chelsea Brooks, had seen an officer in an undercover car. Mr. Potter and Mr. Schlesener had arrived and that they had—they or Mr. Neighbors, I'm not sure who, but they had seen a white undercover police car, which would have probably been myself and Detective Shireman in the area. Mr. Neighbors said they were kind of concerned about the officers being in the area so he cleaned out, picked up all the drug paraphernalia and drugs he could find. He put it into a bag and then he gave it to the guys that came, Mr. Potter and Mr. Schlesener."

According to the detective, Neighbors also admitted selling Potter methamphetamine, and Neighbors said that he wanted to cooperate with the police by purchasing narcotics for their investigations.

Of note, defense counsel's cross-examination of Detective Davis was perfunctory and consisted of only three pages of the trial transcript. While the jury was able to see and hear Detective Davis' testimony and to fully evaluate his credibility, defense counsel did

22

not challenge or question the detective about the veracity or accuracy of his account of Neighbor's confession.

Contrary to my colleagues' assessment, Detective Davis' recitation of Neighbor's confession was corroborated by direct and circumstantial evidence developed by other law enforcement officers involved in the case:

- Detective Davis' recounting of Neighbor's account of Potter and Schlesener arriving at the residence was corroborated by Officer Vortherms' eyewitness observations.

- Detective Davis' testimony about Neighbor's account of Schlesener leaving the residence carrying a bag which contained drugs and assorted drug paraphernalia that Neighbors wanted removed from his residence was substantiated by Officer Vortherms' eyewitness observations and Deputy Samuels' search and seizure of the bag and its contents after stopping the truck shortly after it left Neighbors' residence.

- Detective Davis' recitation about Neighbors' account that he sold Potter methamphetamine was validated when Officer Vortherms saw Neighbors leave his residence and walk up to the truck to briefly engage Potter who was sitting in the truck. Shortly thereafter, Potter was personally searched by Deputy Samuels during the vehicle stop and a small amount of methamphetamine was found in Potter's pants pocket. Moreover, Neighbor's incriminating account was further corroborated by the fact that both men gave Deputy Samuels conflicting exculpatory accounts of their visit to Neighbor's residence until Schlesener finally admitted to Deputy Samuels at the vehicle stop, "that he had believed that Mr. Potter bought [the small quantity of methamphetamine] from Mr. Neighbors because he owed him $50 or owed him prior money." Detective Davis' account of Neighbor's confession was also consistent with the incriminating statements the

23

defendant made to Deputy Samuels when the deputy stopped Neighbors leaving his residence after the drug sale. According to the deputy, "I confronted [Neighbors] about the fact that Potter and Shlesener were already in custody, the things I had located. He did admit to me selling the $50 worth of methamphetamine to Mr. Potter."

- Finally, Neighbor's incriminating admissions to Detective Davis were corroborated by Deputy Samuels who also participated in portions of that interview at the police station. The deputy testified that during that formal interview Neighbors "did confirm that he was distributing methamphetamine, agreed to try to help himself out."

In short, while my colleagues conclude that reversible error occurred because "no evidence" corroborated the testimony of Detective Davis and Deputy Samuels regarding Neighbor's confession, as detailed above, the two officers mutually corroborated each other's testimony, which was also substantiated by Officer Vortherms' testimony and the drugs and paraphernalia seized by Deputy Samuels. Slip op. at 12.

Given the jury's ability to evaluate firsthand the credibility and testimony of Detective Davis and Deputy Samuels, and the substantial and considerable evidence of Neighbors' guilt, which was consistent with the officers' separate testimony regarding Neighbor's incriminating admissions, I am convinced there is no reasonable possibility that the prosecutor's error in argumentation contributed in any way to the verdict. See *Sherman*, 305 Kan. 88, Syl. ¶ 10.

For all of these reasons, I would affirm the conviction.

24